A05A0415. GALLAGHER v. McKINNON.
A05A0744. PELITON, INC. v. McKINNON et al.

(615 SE2d 746)

BLACKBURN, Presiding Judge.

These related cases regard Daniel John Gallagher's "hostile takeover" of Peliton, Inc., a close corporation, from its other director and shareholders. Both cases center on misrepresentations made by Gallagher to Thomas Robert McKinnon, Jr. in order to unduly coerce McKinnon to agree to an issuance of additional company stock to Gallagher, thereby giving Gallagher sole control of Peliton.

In Case No. A05A0415, following a jury trial, Gallagher, the acting president of Peliton,[1] appeals the trial court's rulings invalidating the issuance of a controlling share of Peliton stock to him, contending that the trial court erred by: (1) denying his motion for a directed verdict regarding McKinnon's claim that Gallagher misled him in order to illegally receive a controlling interest in the corporation; (2) submitting an improper verdict form to the jury; (3) excluding testimony with regard to outside wages earned by McKinnon during the same time he was claiming lost wages from Peliton; (4) adding an improper amount of interest to the jury's award of lost wages to McKinnon; (5) reserving judgment on the issue of punitive damages; and (6) finding that Gallagher owed fiduciary duties to McKinnon.

In Case No. A05A0744, Peliton appeals the trial court's grant of summary judgment to its minority shareholders (collectively referred to as Shareholders),[2] contending, among other things that the trial court erred by: (1) finding that the issuance of controlling shares to Gallagher was made without consideration; (2) finding that the issuance of controlling shares to Gallagher breached Gallagher's fiduciary duties to Peliton's shareholders; and (3) rescinding the

---

[1] Peliton was formerly known as Pim-Tec, Inc.

[2] The Shareholders include Thomas Robert McKinnon, Sr., Susan McKinnon, David Ronald Johnson, and William Wade Fraser.

issuance of a controlling share in Peliton to Gallagher. For the reasons set forth below, we affirm in both cases.

### Case No. A05A0415

Viewed in the light most favorable to the jury's verdict, the record shows that, in 1997, McKinnon and Ronald Johnson formed the company which later became known as Peliton.[3] In January 1998, McKinnon and Johnson asked Gallagher to work for Peliton in management and sales, because they lacked expertise in those areas. Shortly thereafter, Gallagher was named president of Peliton, and Johnson decided to leave the corporation in September 1998 to pursue other ventures.[4]

In order to more easily manage the corporation following Johnson's departure, McKinnon and Gallagher marshaled a redistribution of shares in the corporation in order to make themselves equal majority shareholders (each one held approximately 48 percent of the stock). And, to further facilitate their control, McKinnon and Gallagher were named the sole directors of Peliton by March 2002.

On July 24, 2000, Gallagher wrote a letter to Peliton's corporate counsel in which he made his intentions regarding control of the company clear. He wrote: "How can I end up with the majority of [Peliton] because, rest assured, I will, or I'll simply do it on my own."

On September 27, 2002, Peliton sponsored a birthday party for Gallagher at a local restaurant. At this party, a number of the employees were drinking alcoholic beverages, and, at one point, McKinnon got into the back seat of his truck with Annette Yeomans, another Peliton employee. Yeomans testified that, while there, McKinnon made unwanted sexual advances toward her. She testified further, however, that she did not have sex with McKinnon. McKinnon, on the other hand, testified that he was so inebriated at the time that he had no memory of his encounter with Yeomans.

The following Monday morning, McKinnon met with Gallagher, and, despite Yeomans's statements to the contrary, Gallagher told McKinnon that he had sex with Yeomans and that Yeomans was threatening suit against Peliton for sexual harassment. Gallagher then advised McKinnon to go home while he attempted to work things out at the office on his behalf. On Tuesday, Gallagher called McKinnon at home and requested that he attend a meeting at Peliton's corporate counsel's office the following day.

---

[3] Peliton is a corporation which produces extruded plastic products.

[4] Johnson remained a minority shareholder of the company.

When McKinnon arrived at the meeting which was, in reality, an unannounced special meeting of directors, Gallagher, reading from a memo prepared the previous day, told McKinnon that he had slept with Yeomans and that, after investigating the matter with both employees and nonemployees, he believed that this was true and that Yeomans was planning to file a lawsuit. In fact, however, Gallagher had spoken with no one but McKinnon and Yeomans about the matter, and neither one of them told Gallagher that they had sex at the party. Also, Yeomans did not threaten to sue.

Gallagher then informed McKinnon that, in order to protect Peliton from liability from a sexual harassment action, McKinnon would have to be disciplined. This discipline included removing McKinnon from his position as secretary of the corporation, demoting him to maintenance supervisor, reducing his salary by twenty-five percent, and placing him on two years probation.

Gallagher next informed McKinnon that, in order to further protect the corporation's interests, additional shares of stock would have to be issued to Gallagher to give him a controlling interest in the corporation. During the meeting, it was determined that an additional 750 shares would be issued to Gallagher, and it is undisputed that, at the time, there was absolutely no attempt to determine the value of the shares being issued. In fact, value and consideration for the shares was not even discussed.

Following this meeting, McKinnon hired counsel to look into the matter, and, on October 24, 2002, McKinnon met with Gallagher and Peliton's counsel. At this meeting, Gallagher fired McKinnon for contacting Yeomans through his personal counsel in order to question her about the night of the party and her discussions with Gallagher.

Following his termination, McKinnon, in his capacity as a shareholder of Peliton, filed an action pursuant to OCGA § 14-2-940 in which he asked the trial court to: (1) cancel the issuance of the 750 additional shares to Gallagher; (2) reinstate him as an employee and as an officer of Peliton; (3) award him lost wages; and (4) award him attorney fees.

A jury trial ensued, and the jury was asked to decide certain questions of fact regarding McKinnon's claims.

The jury explicitly found that Gallagher lied to McKinnon about his interaction with Yeomans at the company party with the intent to induce McKinnon to agree to a demotion within the corporation. The jury found, however, that McKinnon did not justifiably rely on Gallagher's representations after making reasonable inquiry. Nonetheless, the jury further found that McKinnon did not sign the corporate minutes and resolution freely and voluntarily, but under some type of duress or coercion.

Following these determinations, the jury was asked on the verdict form:

[If McKinnon did not sign knowingly and voluntarily], was the signing done as a result of either (1) fraudulent misrepresentation[s] made by Dan Gallagher which were justifiably relied upon by Robert McKinnon or (2) actions taken by Dan Gallagher in his capacity as a director which was unfairly prejudicial to Robert McKinnon in his capacity as a shareholder.

The jury answered this question affirmatively, and also found that McKinnon suffered damage as a result of justifiable reliance on Gallagher's misrepresentations.

The trial court then used these factual determinations by the jury to conclude that McKinnon's requests for relief pursuant to OCGA § 14-2-940 should be granted. Gallagher now appeals the trial court's ruling.

1. In two related enumerations of error, Gallagher contends that the trial court erred by denying his motion for a directed verdict because the evidence was insufficient to show that McKinnon justifiably relied on his statements regarding his encounter with Yeomans at the special directors' meeting during which McKinnon was disciplined. Gallagher contends that, in the absence of a finding of fraud and justifiable reliance, the trial court had no basis for rescinding the issuance of additional shares of stock to him. Because a finding of justifiable reliance is not necessary to trigger the shareholder protections of OCGA § 14-2-940, we disagree.

As a general matter, an appellate court, when

determining whether the trial court erred by denying appellants' motions for a directed verdict[,] . . . must view and resolve the evidence and any doubt or ambiguity in favor of the verdict. A directed verdict . . . is not proper unless there is no conflict in the evidence as to any material issue and the evidence introduced, with all reasonable deductions therefrom demands a certain verdict.

(Citation, punctuation and emphasis omitted.) *Southern Store &c. Co. v. Maddox.*[5]

OCGA § 14-2-940 provides, in relevant part:

---

[5] *Southern Store &c. Co. v. Maddox*, 195 Ga. App. 2, 3 (1) (392 SE2d 268) (1990).

(a) Subject to satisfying the conditions of subsections (c) and (d) of this Code section, a shareholder of a statutory close corporation may petition the superior court for any of the relief described in Code Section 14-2-941, 14-2-942, or 14-2-943 if:

(1) *The directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, fraudulent, or unfairly prejudicial to the petitioner, whether in his capacity as shareholder, director, or officer of the corporation.*

(Emphasis supplied.)

In turn, OCGA § 14-2-941 provides:

(a) If the court finds that one or more of the grounds for relief described in subsection (a) of Code Section 14-2-940 exist, it may order one or more of the following types of relief: (1) The performance, prohibition, alteration, or setting aside of any action of the corporation or of its shareholders, directors, or officers or of any other party to the proceeding; (2) The cancellation or alteration of any provision in the corporation's articles of incorporation, bylaws, or agreement among the shareholders; (3) The removal from office of any director or officer; (4) The appointment of any individual as a director or officer; (5) An accounting with respect to any matter in dispute; (6) The appointment of a custodian to manage the business and affairs of the corporation; (7) The appointment of a provisional director (who has all the rights, powers, and duties of a duly elected director) to serve for the term and under the conditions prescribed by the court; (8) The payment of dividends; (9) The award of damages to any aggrieved party.

(b) If the court finds that a party to the proceeding acted arbitrarily, vexatiously, or otherwise not in good faith, it may award one or more other parties their reasonable expenses, including attorneys' fees and the expenses of appraisers or other experts, incurred in the proceeding.

Contrary to Gallagher's arguments otherwise, there is no requirement under this statutory provision that all elements of fraud must exist before relief can be granted. The statute explicitly states that relief may be sought where a corporate director has acted in a manner that is illegal, oppressive, fraudulent, *or* unfairly prejudicial. Here, irrespective of Gallagher's contentions that the jury did not find all the elements of fraud, it did find that Gallagher had acted in ways

which were illegal, oppressive, and unfairly prejudicial. The jury also found that these oppressive actions forced McKinnon to agree to the transfer of sole control of the corporation to Gallagher against his will. Gallagher does not contest these findings. As such, the trial court did not err in denying Gallagher's motion for a directed verdict.

2. Gallagher contends that the trial court erred by submitting an improper verdict form to the jury, arguing on appeal that the form elicited ambiguous results regarding the issue of whether McKinnon justifiably relied on Gallagher's misrepresentations. A review of the transcript, however, reveals that Gallagher did not object to the verdict questions about which he now complains. Moreover, following the reading of the jury's verdict, Gallagher made no objections and stated that he had no matters to raise when given the opportunity.

> To be reviewable on appeal, an objection must clearly direct the attention of the trial court to the claimed error and must be stated with sufficient particularity to leave no doubt as to the specific ground upon which the charge is challenged. In addition, a party must voice its objection to a verdict form at the time of its rendition or otherwise such technicality is waived. This is so because a verdict may be reformed or remodeled in the presence of the jury before they have retired from the box.

(Citation and punctuation omitted.) *Torres v. Tandy Corp.*[6]

Accordingly, Gallagher has waived his right to contest the verdict form on appeal.

3. Gallagher next argues that the trial court erred by excluding testimony regarding McKinnon's other sources of income during the time that he was seeking lost wages from Peliton. Specifically, Gallagher contends that he should have been allowed to ask McKinnon about wages paid to him for work completed for his father wholly unrelated to Peliton. In support of this argument, Gallagher, in his reply brief cites *Fried v. Portis Bros. Hat Co.*[7] and *Speer v. Johnson.*[8] Neither of these cases, however, provides any basis for determining that the trial court erred in this matter, given the facts of this case. And Gallagher provides no cogent argument or case law on point. Accordingly, this enumeration lacks merit.

4. Gallagher contends that the trial court erred by adding twelve percent interest to the award of lost wages to McKinnon, arguing that

---

[6] *Torres v. Tandy Corp.*, 264 Ga. App. 686, 690 (3) (592 SE2d 111) (2003).
[7] *Fried v. Portis Bros. Hat Co.*, 41 Ga. App. 30 (152 SE 151) (1930).
[8] *Speer v. Johnson*, 52 Ga. App. 636 (184 SE 388) (1936).

the debt should have been subject to seven percent interest imposed upon open accounts. OCGA § 7-4-2. The award of lost wages, however, is not an open account, and, as such, Gallagher's arguments are inapposite. At the time that the judgment was entered in Gallagher's case, OCGA § 7-4-12 provided that interest could be allowed at the rate of 12 percent. Accordingly, we must reject Gallagher's claim of error in this instance.

5. Gallagher contends that the trial court erred by reserving the issue of punitive damages. However, there is nothing in the record which shows that Gallagher objected to this procedure. As such, Gallagher has waived this contention for purposes of this appeal.[9] See, e.g., *Torres*, supra.

6. Gallagher contends that the trial court erred by determining that he had a fiduciary relationship with McKinnon which would support a finding that Gallagher fraudulently concealed information from McKinnon. As stated above, contrary to Gallagher's contentions in this regard, a finding of fraud was not necessary to support the trial court's decision to rescind the issuance of shares to Gallagher. See Division 1, supra. Therefore, Gallagher's contention in this regard provides no basis for determining that the trial court's decision to rescind the issuance of additional stock to him was improper.

### Case No. A05A0744

In this case, Peliton appeals the trial court's grant of summary judgment to the Shareholders, contending, among other things that the trial court erred by: (1) finding that the issuance of controlling shares to Gallagher was made without consideration; (2) finding that the issuance of controlling shares to Gallagher breached Gallagher's fiduciary duties to Peliton's shareholders; and (3) rescinding the issuance of a controlling share in Peliton to Gallagher.

7. Peliton contends that the trial court erred by finding that the issuance of controlling shares to Gallagher was improperly made without consideration. This issue was fully litigated before a jury in McKinnon's lawsuit, and the jury concluded that the stock was issued without consideration. As discussed above, the evidence of record shows that, prior to issuing controlling shares to Gallagher, no consideration of the value of the shares whatsoever was made. As such, this enumeration is wholly without merit.

---

[9] Moreover, Gallagher has wholly failed to controvert McKinnon's statement that the matter of punitive damages was discussed in a bench conference, and Gallagher agreed to allow the court to make this determination.

8. Peliton contends that the trial court erred by finding that the issuance of controlling shares to Gallagher breached Gallagher's fiduciary duties to Peliton's shareholders. OCGA § 14-2-621 (b) provides:

> The board of directors may authorize shares to be issued for consideration consisting of any tangible or intangible property or benefit to the corporation, including cash, promissory notes, services performed, contracts for services to be performed, or other securities of the corporation.

In addition, the comment to this Code section explains:

> Subsection (c) merely requires the board to determine that the consideration received for shares to be issued is adequate, in fulfillment of its general fiduciary duties to the existing shareholders. Accounting principles are not specified in the Code, and the board of directors is not required by the statute to determine the "value" of noncash consideration received by the corporation (as was the case in former § 14-2-84 (h), requiring each corporation to keep a record of the consideration for all shares issued, and of the number and par value, if any, of the shares issued therefor). Thus, the board need not make a value determination for purposes of accounting entries on the balance sheet, although it may elect to do so. In many instances, property or benefit received by the corporation will be of uncertain value; if the board of directors determines that the issuance of shares for the property or benefit is an appropriate transaction that protects the shareholders from dilution, that is sufficient under Section 14-2-621.

It is clear from the record now before us that, prior to the issuance of additional shares to Gallagher, there was no attempt to determine their value. Gallagher was interested in his control of Peliton, not the well being of its shareholders. As he failed to make any real determination that the consideration for the issued shares was adequate, he breached his fiduciary duties to the existing shareholders. OCGA § 14-2-621 (c).

9. Peliton contends that the trial court erred by rescinding the issuance of a controlling share in Peliton to Gallagher as a general matter. For all the reasons set forth above, this enumeration lacks merit.

*Judgments affirmed. Miller and Bernes, JJ., concur.*

DECIDED APRIL 13, 2005 —
RECONSIDERATION DENIED JUNE 17, 2005 — 

*J. Converse Bright*, for Gallagher.

*Barham & Dover, Wilton E. Stone, Jr.*, for Peliton, Inc.

*Langdale, Vallotton, Linahan & Wetherington, W. Pope Langdale III, Robert A. Plumb, Jr.*, for McKinnon et al.