## A11A1646. VANRAN COMMUNICATIONS SERVICES, INC.
## v. VANDERFORD.

(722 SE2d 110)

PHIPPS, Presiding Judge.

We granted VanRan Communications Services, Inc.'s application for interlocutory review of the trial court's order denying in part its motion for summary judgment. At issue is whether VanRan is entitled to judgment as a matter of law on its shareholder/former employee's claims for (1) an annual bonus and (2) the removal and installation of certain directors and officers of VanRan. Because the trial court erred in denying VanRan's motion for summary judgment on those claims, we reverse.

C. W. Vanderford and Doranne Satterlee started a telephone equipment business called VanRan Communications Services, Inc. In 2003, C. W. Vanderford and Satterlee executed a buy-sell agreement providing, among other things, that "if either party dies or is mentally disabled, the remaining partner will control all decisions re: the corporation." In 2006, C. W. Vanderford died.

C. W. Vanderford's son, Charles M. Vanderford (hereafter "Vanderford"), was employed by VanRan from 1988 through 2008. In addition to a salary, in some years of his employment Vanderford received a bonus from VanRan. In 2009, VanRan's board of directors voted to terminate Vanderford's employment following reports that he had, inter alia, become disruptive and violent and had been involved in altercations with other employees. The board further decided to not pay Vanderford a bonus for 2008.

Vanderford sued VanRan and Satterlee, seeking a declaration that the buy-sell agreement entitled him to continued employment with VanRan and that he was entitled to receive a bonus for work performed in 2008. Vanderford later added a claim for breach of obligation of good faith based on the alleged violation of the buy-sell agreement and seeking to, among other things, have Satterlee and another person removed as directors and officers of VanRan and have himself appointed as a director and officer. At the time of the amendment, Satterlee was a director and CEO of VanRan, and was a 51 percent owner of the voting shares of VanRan. Vanderford was not a director or officer of VanRan at that time, but owned 24.5 percent of the voting shares of VanRan.

VanRan and Satterlee moved for summary judgment. The trial court granted summary judgment to VanRan and Satterlee on Vanderford's claim for continued employment and the related claim of good faith, and to Satterlee on all claims asserted against her individually; the court denied summary judgment to VanRan on the claim for the bonus and for requested changes in VanRan's leadership. We granted VanRan's interlocutory appeal from the denial of its

motion for summary judgment as to those two claims.

> A trial court properly grants summary judgment when the moving party demonstrates there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. The moving party may discharge his burden by demonstrating the absence of evidence to support the nonmoving party's case. If the moving party discharges this burden, the nonmoving party is required to point to specific evidence giving rise to a triable issue.[1]

When reviewing the grant or denial of a motion for summary judgment, this court conducts a de novo review of the law and the evidence.[2]

1. *The claim for the bonus.* In his complaint, Vanderford claimed he was entitled to receive "not less than $175,000.00" from VanRan as a bonus for work he performed in 2008. He based this amount, implicitly, upon the amount VanRan allegedly paid another employee as a bonus for 2008. Vanderford has conceded that the buy-sell agreement contained no provision related to the payment of employee bonuses, and that there was no other written agreement or document entitling him to an annual bonus. VanRan was entitled to summary judgment on this claim.

Vanderford deposed that the bonuses he had previously received were not based on a specific formula or percentage of profits, that he was not guaranteed any particular amount, that the bonuses were "to be based on how well we did and what we did, . . ." and that the amount of the bonuses was decided by Satterlee and his father.

A promise to pay future compensation is not enforceable unless it, among other things, is for an exact amount or based upon a formula or method for determining the exact amount of the bonus.[3] The rationale behind this rule is that "the sum of money to be paid for performance of services under a contract should be definitely and objectively ascertainable from that contract."[4] Where an employee bonus is based even in part on the exercise of discretion, the promise to pay a bonus in the future amounts to a promise to change the terms of compensation in the future and, thus, is an unenforceable

---

[1] *Smith v. Saulsbury*, 286 Ga. App. 322, 324 (1) (c) (649 SE2d 344) (2007) (footnotes omitted).

[2] *Field v. Lowery*, 300 Ga. App. 812, 813 (686 SE2d 422) (2009).

[3] *Arby's v. Cooper*, 265 Ga. 240, 241 (454 SE2d 488) (1995).

[4] *Edwards v. Central Ga. HHS*, 253 Ga. App. 304, 307 (2) (558 SE2d 815) (2002).

executory obligation.[5] Thus, assuming arguendo that there was a contract to pay Vanderford an annual bonus, because the amount was not definitely and objectively ascertainable from the contract, it was not enforceable. Notably, the buy-sell agreement specifically provided that the surviving party (here, Satterlee) would control all decisions regarding the corporation.

Vanderford posits, however, that in this case the indefinite contract to pay a bonus became definite and enforceable through the subsequent words and conduct of the parties.[6] He states that prior to 2003, he earned a salary and commissions at VanRan, but that when he changed positions at VanRan in 2003, he no longer earned commissions and experienced a decrease in pay. According to Vanderford, Satterlee and his father orally agreed in 2003 to pay him bonuses or a "share of the profits" to maintain his pre-2003 compensation levels.

However, as noted above, Vanderford admitted on deposition that he was not guaranteed any particular amount and that the decision as to the amount of any bonus was made by Satterlee and his father. And an accountant/board member for VanRan deposed that Satterlee recommended to the board that Vanderford receive no bonus for 2008, and that the board voted on and approved the recommendation. When asked if the payment of bonuses for VanRan employees was within the board's discretion, the accountant/board member responded "I never knew that it was any other way." Because the payment of a bonus and the amount thereof were discretionary, any promise to pay a bonus was unenforceable.[7] Thus, the trial court erred in denying VanRan's motion for summary judgment on Vanderford's claim for the bonus.

2. *The OCGA § 14-2-941 claim.* In his amended complaint, Vanderford sought, inter alia, the removal of certain directors and officers and his own appointment as a director and officer of VanRan, pursuant to OCGA § 14-2-941.

OCGA § 14-2-941 (a) pertinently provides that if the court finds that one or more of the grounds for relief described in OCGA § 14-2-940 (a) exist, it may order, among other things, the removal from office of any director or officer and/or the appointment of any individual as a director or officer.[8] OCGA § 14-2-940 (a) (1) pertinently provides that a shareholder of a statutory close corporation may petition the superior court for any of the relief described in

---

[5] *Arby's*, supra at 242.

[6] See *Steinemann v. Vaughan & Co.*, 169 Ga. App. 573, 576-577 (1) (313 SE2d 701) (1983).

[7] See *Arby's*, supra at 241.

[8] OCGA § 14-2-941 (a) (3), (4).

OCGA § 14-2-941 (a) if the directors or those in control of the corporation have acted, are acting, or will act in a manner that is illegal, oppressive, fraudulent, or unfairly prejudicial to the petitioner, whether in his capacity as shareholder, director or officer of the corporation.[9]

Vanderford based his requests on an alleged discrepancy between VanRan's income as reported on one of its internal financial documents for 2008 and its income as reported on VanRan's federal income tax return for the same year. He claimed that VanRan either incorrectly reported revenue information in its internal records or falsely reported revenue to the Internal Revenue Service ("IRS").

VanRan moved for summary judgment, asserting that there was no evidence that those in control of VanRan had acted, were acting or would act in a manner that was illegal, oppressive, fraudulent, or unfairly prejudicial to Vanderford as a shareholder. To support its motion, VanRan submitted the affidavit of a certified public accountant who was also a member of VanRan's board of directors. The accountant averred that: he had provided accounting services to VanRan since 1986, including the preparation of its annual tax returns; he had reviewed VanRan's internal financial reports for 2008 and prepared the tax return for that year; the difference between the gross revenue reported on VanRan's 2008 internal financial reports and that reported on VanRan's 2008 tax return resulted from the application of two different accounting methods (cash versus accrual methods), which methods he explained; comparing the two numbers "is essentially comparing apples to oranges"; many companies, like VanRan, utilize an accrual accounting method for internal reports and a cash accounting method for tax reporting purposes; under such circumstances, the two reports reflecting income "would almost never match"; and the internal financial reports were prepared by bookkeepers (not certified public accountants), were preliminary in nature, and were used solely as management tools.

In response, Vanderford submitted his own affidavit, stating that the accountant was not involved in the daily business of VanRan, that the accountant had no access to VanRan's financial records prior to 2008, and that in 2008 the accountant approved a particular employee's bonus based on a sales figure he "apparently knew" had been inflated. On appeal, Vanderford points also to the testimony of VanRan's bookkeeper/receptionist, who acknowledged on deposition that VanRan's meeting minutes (dated December 15, 2008) indicated that VanRan "anticipated gross revenues exceeding

---

[9] See *Gallagher v. McKinnon*, 273 Ga. App. 727 (615 SE2d 746) (2005).

$10 [million] this year." The bookkeeper acknowledged also that she "remember[ed] that the gross revenues for . . . 2008 were close[ ] to $10 million or exceeded $10 million"; and that the tax return VanRan filed with the IRS showed gross receipts in the amount of approximately $8.3 million.

On appeal, Vanderford asserts that VanRan committed fraud by underreporting its income to the IRS, and that the bookkeeper's testimony alone provides sufficient circumstantial evidence for a jury to consider his OCGA § 14-2-941 claim. However, Vanderford has not pointed to any evidence of fraud.[10] There is evidence that the two figures are different, that two different accounting methods (both commonly used) were utilized, by different persons in different professions, and that such figures would "almost never" match. Thus, VanRan pointed out the absence of evidence on one or more essential elements of Vanderford's case — that VanRan made a false representation, and did so with knowledge that it was false.[11] Vanderford was required to point to specific evidence giving rise to a triable issue.[12]

But Vanderford offered no evidence to rebut the accountant's explanation, and otherwise failed to point to specific evidence showing that VanRan falsely reported income and did so with knowledge that the report was false.[13] Bare conclusions and contentions unsupported by an evidentiary basis in fact are insufficient to oppose a motion for summary judgment.[14] Inasmuch as Vanderford failed to carry his burden on summary judgment of coming forward with rebuttal evidence to demonstrate the existence of a genuine issue of fact on his claim of fraud, the trial court erred in denying VanRan's motion for summary judgment on Vanderford's OCGA § 14-2-941 claim.[15]

*Judgment reversed. Andrews and McFadden, JJ., concur.*

DECIDED JANUARY 10, 2012.

*Michael J. Gorby, Mary D. Peters, Jeffrey D. Cooper*, for appellant.

---

[10] "The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." *Serchion v. Capstone Partners*, 298 Ga. App. 73, 76-77 (2) (679 SE2d 40) (2009) (citation, punctuation and footnote omitted).

[11] See generally id.

[12] Id. at 77 (2).

[13] See generally id.

[14] *Griffin v. State Bank of Cochran*, 312 Ga. App. 87, 91 (1) (a) (718 SE2d 35) (2011).

[15] See id. (to survive motion for summary judgment on her fraud claim, plaintiff was required to present some evidence of each element of the fraud tort; grant of summary judgment was proper if one essential element of fraud claim was eliminated).

*Mahaffey, Pickens & Tucker, Matthew P. Benson*, for appellee.