GEORGE DeLATHOUWER, Plaintiff-Appellant, *v.*
KEWANEE BOILER CORPORATION, Defendant-Appellee.

Third District    No. 80-223

Opinion filed April 8, 1981.

BARRY, J., dissenting.

Thomas H. Marshall and John J. Blake, both of Blake & Uhlig, of Kansas City, Kansas, and Alan R. Howarter, of Howarter & Eschbach, of Ottawa, for appellant.

Charles A. Brady, of Oak Brook, and R. Sheridan Welch, of Kewanee, for appellee.

Mr. PRESIDING JUSTICE SCOTT delivered the opinion of the court:

This action was commenced in the Circuit Court of Henry County seeking a declaratory judgment. At issue were the plaintiff George DeLathouwer's rights under a collectively bargained retirement and disability pension plan administered by the defendant, Kewanee Boiler Corporation. After an adverse ruling in the circuit court, the plaintiff prosecuted this appeal.

Kewanee Boiler is a 112-year-old business engaged in the manufacture of boiler products at Kewanee, Illinois. In the early part of this century it was incorporated under the laws of the State of Illinois. In 1927 the then Kewanee Boiler Corporation was purchased by American Standard, Inc. American Standard dissolved the Illinois corporation and ran the boiler plant as a division of American Standard until March 2, 1970, when the plant was sold to certain investors who took title in the name of the rechartered Kewanee Boiler Corporation.

The plaintiff was first employed at the boiler plant on November 21, 1945, when the plant was operated by American Standard. Mr. DeLathouwer, who was born in 1919, worked for American Standard for 24 years 3 months, until the time that ownership of the boiler plant changed hands. He continued in the employ of the new owners, Kewanee Boiler, until December 1, 1975, at which time he was certified as totally and permanently disabled and entitled to receive disability benefits from his then current employer, Kewanee Boiler.

At the same time the plaintiff made application to his previous

employer, American Standard, for early retirement benefits. At the time of the change in ownership of the boiler plant in 1970, certain of the employees, Mr. DeLathouwer being one such employee, had acquired irrevocably vested pension rights under the plan administered by American Standard. Those benefits became "frozen" on March 2, 1970, as the plaintiff and others ceased their employment with American Standard. The benefits payable under the American Standard pension plan could be paid at a reduced rate basis beginning with an "early retirement" date, or at a full-rate basis beginning with the "normal retirement date" upon reaching age 65. It is agreed that plaintiff's full rate monthly pension benefit as "frozen" on March 2, 1970, is $4.25 times the 24¼ years he was employed by American Standard. That equals a full pension of $103.06.

When the plaintiff applied for early retirement benefits under his American Standard pension, he was nine years away from his normal retirement date of November 1, 1984. Since the frozen pension benefits are paid over a longer period of time with the early retirement option, the full benefit is actuarially reduced in amount. As a result of this actuarial reduction, Mr. DeLathouwer became entitled to a monthly pension benefit from American Standard in the sum of $47.41.

The primary issue on this appeal is what effect the American Standard pension has on the plaintiff's right to disability pension under the employment agreement in force at the time he was certified disabled. On December 1, 1975, employees at the boiler plant were represented by Local No. 195 of the International Brotherhood of Boilermakers, Ironship Builders, Blacksmiths, Forgers and Helpers, AFL-CIO. The Local, as representative for the plaintiff, entered into an agreement effective March 1, 1974, which governs the disability pension benefits payable under the instant facts. The pertinent sections of that 52-page printed agreement are set forth below.

"15.01 The following retirement pensions as described in the booklet with the Kewanee Boiler Corporation are outlined as follows:

\* \* \*

(f) Disability Benefit. An employee is entitled to a monthly disability income, payable during the continuance of his disability up to age 65 if:

(1) He is certified by the employer as being totally and permanently disabled, and

(2) He has completed ten (10) years continuous service including time with American Standard, Inc.

The amount of monthly benefit income will be equal to the employee's credited benefit without actuarial reduction. If the minimum is applicable the $60.00 monthly offset will not be made

until Social Security becomes payable. Minimum monthly benefits will be $100.00. If the employee is still disabled at age 65, the normal retirement annuity is then payable."

As was testified at trial, the "booklet" to which the employment agreement refers is the *Pension Plan, Summary Plan Description for Bargaining Employees of Kewanee Boiler Corporation*. This summary booklet is distributed to covered employees pursuant to the requirements of the Employee Retirement Income Security Act (29 U.S.C., section 1001 *et seq.* (1976)). The booklet, like the employment agreement, is not a complete statement of the disability pension plan; the booklet includes this paragraph:

"Your rights and benefits under the Plan outlined in this booklet are subject to the terms of the Plan and to the Group Annuity Contract issued to Kewanee Boiler Corporation by Aetna Life Insurance Company, Hartford, Connecticut. A copy of the Contract and Plan is available in the Plan Administrator's office for inspection at any time during the business day."

The Aetna "contract and plan" were admitted into evidence in the circuit court as Joint Exhibit No. 4.

Joint Exhibit No. 4 establishes the disability pension for Kewanee Boiler employees as follows:

"C4—2. The amount of each monthly disability payment will equal either item (a) or item (b) whichever is applicable:

With respect to a member who was in the service of American Standard, Inc. prior to March 2, 1970:

(a) $4.25 times his Years of Continuous Service with American Standard, Inc., plus one twelfth of the yearly amount determined from paragraph C1—1 based on his Years of Continuous Service up to the date he became disabled, but not less than $100.00."

The "amount determined from paragraph C1—1" is calculated as follows:

"For Members retiring after March 1, 1975,

(a) $75.00 ($6.25 per month times twelve months'; times

(b) the number of his Years of Continuous Service with the Employer."

The plaintiff and defendant both read and applied this same operative language in the Aetna plan, but their respective calculations of the monthly disability pension payable to Mr. DeLathouwer differ. The reason for the differing result is that the litigants differ on the application of the $100 minimum monthly payment.

The plaintiff was employed by American Standard 24¼ years.

24¼ times $4.25 equals $103.06

The plaintiff was employed by Kewanee Boiler 5¾ years before his disability.

5¾ times $75.00 equals $431.25

1/12 of $431.25 equals $35.94

The monthly disability payment according to the Aetna plan is $139 ($103.06 plus $35.94).

At this point the disagreement arises as both parties factor in the previously mentioned early retirement pension from American Standard. The plaintiff reasons that after deducting the $47.41 paid by American Standard as an early retirement pension ($139 minus $47.41), the remainder to be paid by Kewanee Boiler is $91.59, or less than the $100 minimum.

Plaintiff urged the court below to conclude that he was contractually entitled to a minimum disability pension from Kewanee Boiler of $100, or a total combined monthly payment of $147.41 ($100 from Kewanee Boiler plus $47.41 from American Standard).

In the circuit court, the defendant successfully argued that plaintiff's calculations incorrectly applied the $100 minimum. The defendant points out that the monthly disability payment according to the Aetna plan is $139 ($103.06 plus $35.94). As $139 is more than the monthly minimum, defendant believes that it owes Mr. DeLathouwer only $91.59 each month, or the contractual disability payment minus the payment from American Standard ($139 minus $47.41). As we stated at the outset, the judge in the Henry County court found "that the Defendant [had] properly interpreted and implemented the applicable portion of the pension plan."

Testimony was offered without objection in the court below which supported the defendant's interpretation of the $100 minimum provision. Specifically, Mr. Neale McDonald, the defendant's vice president for industrial relations, testified that the Aetna plan had always been interpreted consistent with Kewanee Boiler's position in Mr. DeLathouwer's case. Also, Mr. Lance Weiss, a consulting actuary whose profession is reviewing and administering employee benefit plans, testified that in his professional opinion Kewanee Boiler was correctly interpreting the Aetna plan. Also called as witnesses were the president and a steward for Local 195, both of whom testified on behalf of the plaintiff.

The plaintiff urges us to find that the Aetna plan, part of the employment agreement, is not ambiguous and therefore requires no extrinsic evidence for its interpretation. Further, plaintiff argues that no express contract provision authorizes the coordination of the American Standard retirement pension with the Kewanee Boiler disability pension. We disagree.

■■ First, with regard to the coordination of the two plans, we find that plaintiff's position tacitly admits the fact that benefits should be coordinated. The Aetna plan, set forth in Joint Exhibit No. 4, is incorporated by

reference in the employment agreement between Local 195 members and Kewanee Boiler. That plan establishes disability benefits for Mr. DeLathouwer in an amount of $139 monthly. If there were no coordination of benefits, Mr. DeLathouwer could claim the $139 monthly disability pension from Kewanee Boiler plus the $47.41 monthly retirement benefit from American Standard. Neither plaintiff nor defendant contends for such a result, so both tacitly admit that some setoff is proper for the amounts received from American Standard. Not only do both parties make this tacit admission, but the Aetna plan itself expressly begs the same result. Disability benefits under the Kewanee Boiler-Aetna plan are based on service not only with Kewanee Boiler but also with American Standard. We believe this formula for determining total disability suggests that some portion of the benefit payment should be made by American Standard.

■■ ■ Having determined that a setoff or coordination of benefits is required by the tacit admission of the parties and by the formula established by the express terms of the disability plan, it is readily apparent that the mechanics of that setoff or coordination of benefits were nowhere detailed in the written agreements of the Local and Kewanee Boiler. We believe the result of this omission was an incomplete and ambiguous contract.

> "If a contract is in writing, is unambiguous and contains no uncertain terms, interpretation of the contract is a question of law for the court. [Citations.] Where the meaning of a contract is plain and unambiguous, the court will not resort to rules of construction. [Citations.] However, whether an ambiguity exists in a contract is a question of law which must initially be determined by the trial court before any extrinsic evidence can be introduced. [Citations.] When the court has determined that an ambiguity exists in the contract, evidence of prior and contemporaneous transactions and other extrinsic facts may be introduced by the parties and considered by the court in ascertaining the true meaning of the contract. [Citations.] * * * [I]f the extrinsic facts and circumstances are controverted or if the meaning of the contract is uncertain in light of the extrinsic evidence, then the intent of the parties to the contract must be determined as a question of fact by the jury or by the court in a trial without a jury. [Citations.]" (*Nerone v. Boehler* (1976), 34 Ill. App. 3d 888, 890, 891, 340 N.E.2d 534, 536, 537.)

Because we believe the trial court correctly found the writings to be ambiguous, we believe that the court correctly admitted extrinsic evidence to aid in interpretation.

■■ As previously recited, the extrinsic evidence offered by the plaintiff

and defendant was contradictory, thus casting the burden on the trier of fact, in the instant case the circuit judge, to determine the intent of the parties. Where the trial judge sits as the trier of fact, his findings based on conflicting testimony will be upheld unless against the manifest weight of the evidence. (*Erlich v. Nyberg* (1979), 78 Ill. App. 3d 500, 396 N.E.2d 1273.) In the case at bar, the testimony of McDonald and Weiss provided a sufficient evidentiary basis to uphold the trial court's resolution of the ambiguities in the written agreement.

After review of the record as supplemented, and after studying the briefs of counsel as well as the authorities cited therein, we believe the court below arrived at the correct resolution of this request for declaratory judgment. Therefore, for the reasons previously set forth, the judgment of the Circuit Court of Henry County is affirmed.

Affirmed.

ALLOY, J., concurs.


Mr. JUSTICE BARRY, dissenting:

I do not agree that defendant Kewanee Boiler is entitled to deduct the amount of plaintiff's monthly early retirement pension ($47.41) from his disability pension ($139.00), thereby giving him a disability pension of only $91.59 and a total pension of only $139. Such a construction of the pension plan flies in the face of the plain language of section C4—2(a) of the contract which specifies that the amount of each disability payment for a member who was employed by American Standard, Inc., prior to March 2, 1970, shall be "not less than $100.00." It would be difficult to imagine a less ambiguous provision for fixing the minimum disability payment. To me it is crystal clear that any employee eligible to receive disability benefits computed under section C4—2(a) is guaranteed a disability payment of at least $100 each month without regard to any other benefits received from other sources. Had the Kewanee Boiler pension plan contained an express provision for coordination of benefits or for the setoff of other benefits, then, of course, the result would be different. But the plan contains no such provision.

To support its conclusion, the majority relies upon plaintiff's acceptance of a $100 minimum disability payment, instead of the full $139, as a willingness to coordinate benefits by means of a partial setoff. This is interpreted as a tacit admission that benefits of the two plans should be coordinated. However, the fact that plaintiff did not claim additional benefits does not require a denial of those benefits which plaintiff does rightfully claim.

The majority also relies upon the inclusion of years of service with

American Standard in the formula for computing disability benefits as suggesting an intention to coordinate benefits. I disagree. The American Standard pension plan was "frozen" at the time Kewanee Boiler purchased the business and employees who subsequently became disabled were entitled to disability benefits only from Kewanee Boiler. The fact that years of service at American Standard were included in the formula for determining the amount of benefits is not indicative of an intent to reduce the benefit payment by the amount of benefits received under the retirement plan of American Standard. Had that been the intent, it could easily have been stated.

Since I do not find the Kewanee Boiler pension contract ambiguous, I see no need to resort to evidence of extrinsic facts to aid in interpretation of the contract. Construction of this contract was a question of law, not of fact. Therefore, I would reverse the judgment of the trial court.