## A05A0261. BLUESHIFT, INC. v. ADVANCED COMPUTING TECHNOLOGIES, INC.
### (616 SE2d 816)

SMITH, Presiding Judge.

In this appeal, we must decide whether the trial court correctly interpreted a contract executed by Blueshift, Inc. and Advanced Computing Technologies, Inc. ("ACT"). Because we conclude that the trial court interpreted the contract incorrectly, we reverse the trial court's judgment in favor of ACT.

Blueshift, a company whose primary business is software development, contracted with its client, E-Panacea.com, to custom build specific software modules. Blueshift lacked certain programming skills, and it located a programmer through a search on the internet. The programmer was employed by ACT, which provides computer programming, training, and problem solving, and places its employee programmers with other companies temporarily on a contractual basis. Blueshift and ACT eventually executed a contract providing for the consultant's services.

When E-Panacea.com stopped paying Blueshift because it did not receive necessary further funding for the project, Blueshift stopped paying ACT for the services of its consultant. ACT demanded payment, and when it was not forthcoming ACT brought this suit against Blueshift. Blueshift answered and counterclaimed, and ultimately a bench trial was held. After hearing the evidence, the trial court ruled from the bench in favor of ACT, awarding it $20,583.13 principal, $9,970 prejudgment interest at the rate of 18 percent, and attorney fees in the amount of $5,828. Judgment in those amounts was entered, and Blueshift appeals.

The dispute between Blueshift and ACT regarding payment arises from the parties' differing interpretations of the payment provisions in the contract they executed. The difference in the parties' understanding of those provisions centers on the interplay between portions of clause 12 of the contract and paragraph 9 of the addendum to the contract, consisting of a one-page "Statement of Work." The pertinent provisions of the two contract terms are as follows:

12: PAYMENT FOR SERVICES.

12.2. To the extent that Blueshift's client refuses or is otherwise not obligated to pay Blueshift for the services provided by the supplier hereunder, then in such event(s), Blueshift shall not be obligated to pay any such amounts to the Supplier.

. . .

Nothing specified in any other part of this document, any other document or in any relevant Statement of Work shall alter the terms set forth in this clause 12.2. In the event of any conflict between this and other such documents, this clause 12.2 shall prevail.

12.3. Supplier will submit invoices to Blueshift every fifteen days, showing the description of services, expenses and the amount due.

12.4. Payment shall be made by Blueshift to the supplier on the last day of the following month on which the invoice is dated or within five days of receiving payment for the relevant statement of work from its client[,] whichever is later. . . .

12.6. The relevant Statement of Work may specify payment terms or may alter some of these payment terms. But Clause 12.2 shall not be altered by any Statement of Work and shall prevail in the event of any conflict between these terms and terms specified in any other document, including the relevant Statement of Work.

The Statement of Work appended to the agreement provides in paragraph 9 as follows:

9. Schedule of payment: As per terms in Clause 12 of the agreement, Blueshift will be invoiced every calendar month. Invoices will be submitted along with client-approved timesheets. Blueshift will settle the invoices net 30 days on receipt of invoice.

ACT submitted the testimony of its president, Joann Taylor, who stated that she insisted on the addendum because she understood that Clause 12 of the agreement meant that ACT would not be paid if Blueshift's client did not pay Blueshift and she was dissatisfied with that clause. She testified that she informed Donald Sequeira, Blueshift's senior vice president, who was negotiating the contract terms with her, that Clause 12 of the agreement "is not something that we ever do in a standard contract," and that she would not agree to those payment terms. She informed Sequeira that ACT's "terms are 30 days from invoice date regardless of whether or not you get paid by your client; that I don't ever agree to do terms that are not those terms. And . . . that the only way that we would agree to doing this is if in the actual statement of work if it's stated in there, that we

would just say 30 days from invoice date." According to Taylor, Sequeira replied "that's no problem." Taylor testified that at her request, therefore, the Statement of Work was appended to the standard agreement reciting the negotiated specifics that applied to this particular agreement. In paragraph 9 of the Statement of Work, the payment term was 30 days after invoice "[b]ecause that's the only way we do business." It was Taylor's understanding that ACT would be paid even if Blueshift was not paid by its client.

Blueshift's president, Valmiginathan Raghunathan testified that Blueshift was completely satisfied with the work ACT's consultant performed for its client and that ACT billed him for the work performed. It was his understanding, however, that "Blueshift's obligation to pay ACT [was] contingent upon Blueshift getting paid by the client."

After hearing evidence and argument of counsel, the trial court announced from the bench that

> The court finds that Exhibit A [the Statement of Work] does, in fact, control in this matter, that it clearly changes Clause 12 of the contract. Even if it didn't, it appears to the Court that Blueshift, Inc. has been paid more than — from their client than they've been invoiced by [ACT], even though it wasn't paid in full. That work was performed for other clients and that even if the contract wasn't controlling in this matter, that quantum meruit clearly would allow recovery for [ACT]. Therefore, I find in . . . favor of the plaintiff in the amount of $20,583.13 plus $9,970.00 in interest at 18 percent, for a total of $30,553.13. And I also find for attorney's fees in the amount of $5,828.

We conclude that the trial court's analysis is faulty in several respects.

1. First, the trial court erred in its conclusion that quantum meruit would permit ACT to recover "even if the contract wasn't controlling." It is well established that "[r]ecovery in quantum meruit is not authorized when, as here, the claim is based on an express contract."[1] (Citations and footnote omitted.) *Kwickie/Flash Foods v. Lakeside Petroleum*, 246 Ga. App. 729, 730 (541 SE2d 699) (2000). Because ACT must rely on the contract to support its claim for recovery, quantum meruit is not applicable.

---

[1] "Neither does an unjust enrichment theory lie where there is an express contract." (Citations omitted.) *Kwickie/Flash Foods v. Lakeside Petroleum*, 246 Ga. App. 729, 730 (541 SE2d 699) (2000).

2. Second, three steps govern the process of contract interpretation. The trial court must first decide whether the contract language is ambiguous. If it is, the trial court then applies the applicable rules of contract construction in OCGA § 13-2-2. If an ambiguity still remains, it must be resolved by the trier of fact. *Asian Square Partners v. Ly*, 238 Ga. App. 165, 166 (1) (518 SE2d 166) (1999). "In construing a contract, courts must give words their usual and common meaning. [Cits.]" Id. at 167. And "the entirety of the agreement should be looked to in arriving at the construction of any part. . . . The contract is to be considered as a whole, and each provision is to be given effect and interpreted so as to harmonize with the others." (Citations and punctuation omitted.) *Horwitz v. Weil*, 275 Ga. 467, 468 (569 SE2d 515) (2002).

The trial court apparently interpreted the contract by applying the rules of contract construction without first determining whether the contract's terms were ambiguous. We certainly agree with the trial court that in construing contracts, typewritten provisions generally prevail over conflicting printed ones. *Patellis v. 100 Galleria Pkwy. Assoc.*, 214 Ga. App. 154, 155 (2) (447 SE2d 113) (1994). But the rules of contract construction may not be applied in this case because this contract is not ambiguous. Reading the agreement in its entirety, Clause 12 of the original contract and paragraph 9 of the Statement of Work do not conflict. See id. Rather, our reading of the language in paragraph 9 of the addendum shows clearly that it addresses only sub-clauses 12.3 and 12.4 of the contract, modifying the time in which Blueshift must be invoiced and the time in which it must "settle" those invoices. With regard to those terms, we agree with the trial court that paragraph 9 of the addendum controls.

Because paragraph 9 of the addendum does not address the subject matter of the remaining sub-clauses in Clause 12 of the contract, it follows that nothing in paragraph 9 of the addendum changes sub-clauses 12.2 or 12.6. Those sub-clauses remain as written in the contract, and no ambiguity exists as to their meaning. Sub-clause 12.2 provides clearly and without ambiguity that Blueshift need not pay ACT if Blueshift has not been paid by its third-party client. It also provides that nothing in the contract or "any other document" or "any relevant statement of work" may alter that term. Sub-clause 12.6 of the contract is even clearer. It provides that sub-clause 12.2 "shall not be altered by any statement of work" and that it "shall prevail" in the event it conflicts with "any other document." The trial court erred in finding that paragraph 9 of the addendum conflicts with sub-clauses 12.2 and 12.6 of the contract and in applying the rules of construction to their unambiguous terms.

3. Finally, the trial court's finding that Blueshift "has been paid more than — from their client than they've been invoiced by [ACT],

even though it wasn't paid in full" is irrelevant. The record establishes that Blueshift was paid by its client for the work of several different consultants and for software, hardware, and product management. Nothing in the record supports an inference that Blueshift was paid more than it was invoiced by ACT for its consultant's work. Because Blueshift had an obligation to pay for other consultants and other services, it does not follow that Blueshift could use the funds paid by its client and intended for other work to settle ACT's invoices. The fact that Blueshift received some funds from its client is therefore irrelevant to the issue in this case. The judgment below must be reversed.

*Judgment reversed. Ellington and Adams, JJ., concur.*

DECIDED JUNE 21, 2005.

*Theodore H. Lackland,* for appellant.
*Webb, Tanner & Powell, Matthew P. Benson,* for appellee.