**FIFTH DIVISION
MCFADDEN, P. J.,
BROWN and MARKLE, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules

June 27, 2023

# In the Court of Appeals of Georgia

A23A0490. PANGBORN, LLC et al. v. STONECIPHER.

MCFADDEN, Presiding Judge.

This case calls upon us to administer Illinois contract construction law. And, as a preliminary matter, it calls upon us to reiterate that the duty of clerks of court to file pleadings is ministerial and does not entail exercises of discretion.

This is a contract dispute between Roger Stonecipher and his former employers, Pangborn, LLC and Pangborn's owner, United Generations, LLC. The parties disagree about the amount of a long-term incentive award that Pangborn owes Stonecipher.

Upon Stonecipher's termination, the parties entered a separation agreement under which he is entitled to receive an award in a specified amount "subject to audited financials." The agreement does not elaborate. The parties disagree about the

circumstances under which the audited financials alter the award and about how such an alteration is to be calculated.

There had been provisions for such an award and for a method calculating it in a pre-existing long-term incentive plan that had governed Stonecipher's award during his employment, and the award specified in the separation agreement is the maximum award that would have been available under that plan. But the separation agreement contains a merger clause that explicitly supersedes that plan.

Nevertheless, relying on that plan's method of calculation, Pangborn paid Stonecipher about a third of the amount specified in the separation agreement. Stonecipher brought this action against Pangborn and United Generations (collectively, the defendants). He alleged breach of the separation agreement, breach of the duty of good faith and fair dealing implied in that agreement, and sought attorney fees under OCGA § 13-6-11.

The trial court granted Stonecipher partial summary judgment on his breach of contract claim, holding that as a matter of law Stonecipher was entitled to the full amount of long-term incentive award specified in that agreement. The trial court held that the agreement's merger clause prevented him from considering the terms of the long-term incentive plan in construing the contract. And the trial court held that "the

2

amount and results of the audited financials are inapplicable" to a ruling on Stonecipher's summary judgment claim. The trial court also denied the defendants' cross-motion for summary judgment on all of the claims.

The defendants appeal.[1] As to the breach of contract claim, they argue that the trial court erred in refusing to consider either the long-term incentive plan or Pangborn's audited financial statements when construing the separation agreement. And they argue that, construed in light of those documents, the separation agreement unambiguously permitted them to pay Stonecipher less than the full amount of the long-term incentive award.

As detailed below, we find that the long-term incentive plan cannot be considered when construing the separation agreement. The audited financial statements are to be considered, but the separation agreement is ambiguous as to how the audited financial statements are to affect the amount of long-term incentive award that Pangborn is required to pay Stonecipher.

Under Illinois law, which governs this agreement, extrinsic evidence must be considered in resolving that ambiguity. Because both sides argued to the trial court

---

[1] Although the defendants sought to appeal the trial court's order by filing an application for interlocutory review under OCGA § 5-6-34 (b), the order is subject to direct appellate review. See OCGA § 9-11-56 (h).

3

that the agreement was unambiguous, the impact of any extrinsic evidence in construing the agreement was not raised or ruled upon below. So we reverse the grant of partial summary judgment to Stonecipher and affirm the denial of summary judgment to the defendants on the claim for breach of contract.

On the other hand, we also find genuine issues of material fact as to whether the defendants acted in bad faith, so we affirm the trial court's denial of summary judgment to them on Stonecipher's claims for a breach of the duty of good faith and fair dealing and for attorney fees.

1. *The defendants' notice of appeal.*

Before turning to the merits of this appeal, we note that an issue arose regarding whether the defendants timely filed their notice of appeal. It appears that the clerk of the trial court initially rejected the filing because its caption identified the parties as "Appellants-Defendants" and "Appellee-Plaintiff" rather than "Defendants" and "Plaintiffs."

The defendants corrected this perceived imperfection as soon as they learned of the rejection. But as a consequence of that rejection, the notice of appeal was initially deemed filed a day late, so Stonecipher moved to dismiss the appeal. The trial court granted the defendants' motion to relate the filing of the notice of appeal to the

4

date of the defendants' initial, timely submission. And Stonecipher, to his credit, then withdrew his motion.

Nevertheless, we take this opportunity to reiterate that clerks of court "have the legal duty to file pleadings, not to ascertain their legal effect. These duties of the clerk relating to the filing of pleadings are ministerial in nature and do not involve the exercise of discretion." *Alexander v. Gibson*, 300 Ga. 394, 395 (794 SE2d 597) (2016) (citations and punctuation omitted). Accord *Ford v. Hanna*, 292 Ga. 500, 501 n. 2 (739 SE2d 309) (2013); *Hood v. State*, 282 Ga. 462, 464 (651 SE2d 88) (2007).

More particularly, there is no authority for the proposition that a notice of appeal must denominate the parties in the way the trial court clerk undertook to require. On the contrary, under our Appellate Practice Act, the form of a notice of appeal is sufficient so long as it substantially complies with the template set forth in OCGA § 5-6-51. A technically deficient notice of appeal can confer jurisdiction upon an appellate court so long as it is "sufficient to notify the opposing party that an appeal [is] being taken [and is] not so defective as to mislead or prejudice him." *Steele v. Cincinnati Ins. Co.*, 252 Ga. 58, 60 (311 SE2d 470) (1984).

Where, as here, a timely submitted notice of appeal is sufficient to confer jurisdiction, the clerk of the trial court does not have the authority to act in a way that

would render the filing of the notice untimely and divest the appellate court of jurisdiction. See generally *Hughes v. Sikes*, 273 Ga. 804, 805 (1) (546 SE2d 518) (2001) ("Although the notice of appeal must be filed in the court below, [the appellate court] alone has the authority to determine whether such filing is sufficient to invoke its jurisdiction.").

2. *Facts and procedural history.*

"Summary judgment is appropriate when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. We apply a de novo standard of appellate review and view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant." *Siarah Atlanta Hwy v. New Era Ventures*, 350 Ga. App. 59, 60-61 (1) (828 SE2d 4) (2019) (citation and punctuation omitted).

So viewed, the evidence shows that from June 2017 to February 2020, Pangborn employed Stonecipher as its president. Stonecipher's compensation included a long-term incentive award that was calculated based on the company's audited financial statements under the terms of a long-term incentive plan.

In February 2020, United Generations and Stonecipher entered into the separation agreement at issue in this case. They agreed that Illinois law would govern the interpretation of the agreement.

Among other things, the agreement provides that "[s]ubject to audited financials, the Company [Pangborn] will pay [Stonecipher his] Long-Term Incentive in [a specified amount] over the next twenty-four months in [a specified amount] each month less applicable taxes." The agreement provides for those payments to begin "on the first regular Company pay date that occurs at least five (5) business days following expiration of [a] Revocation Period" defined in the agreement.

The agreement also provides that it "constitutes the complete understanding between [the parties] concerning all matters affecting [Stonecipher's] employment with [Pangborn] and the termination thereof" and that it "supersedes all prior agreements, understandings, and practices concerning such matters, including . . . any . . . incentive or bonus plans or programs[.]"

After Pangborn's 2018/2019 audited financial statements were completed in June 2020, the defendants refused to pay Stonecipher a long-term incentive award in the amount specified in the separation agreement. Instead, they took the position that

7

Stonecipher is entitled to only about one-third of that amount. The defendants relied on a method of calculation set out in the long-term incentive plan.

Stonecipher maintains that he is entitled to the full amount of the long-term incentive award specified in the separation agreement. He sued the defendants for breach of contract, breach of the implied duty of good faith and fair dealing, and attorney fees.

On the parties' cross-motions for summary judgment, the trial court granted partial summary judgment to Stonecipher on the breach of contract claim. The trial court held that the agreement unambiguously required the defendants to pay the full specified amount of long-term incentive award to Stonecipher; that the agreement did not incorporate by reference the long-term incentive plan but, to the contrary, expressly superseded that plan; and that "all documents concerning the parties' negotiations, calculations, or the documents related to the [long-term incentive plan] should be excluded as a matter of law." The trial court also found that "the amount and results of the audited financials are inapplicable" because they cannot be interpreted without reference to material that is barred by the agreement's merger clause; because the audited financial statements themselves are barred by the merger

8

clause; and because the agreement is "silent as to how the 'audited financials' will change or affect the amount of the [long-term incentive award] payment."

The trial court denied the defendants' cross-motion for summary judgment.

3. *Breach of contract.*

(a) *Illinois law.*

Illinois law governs the construction of the agreement in this case. It is generally similar to Georgia law on contract construction. But it elevates extrinsic evidence over the rule that a contract is construed against its drafter by providing for the consideration of extrinsic evidence at an earlier stage in the construction process, before the application of the rule that a contract be construed against the drafter.

Under Illinois law,

> [i]n construing a contract, the primary objective is to give effect to the intention of the parties. A court will first look to the language of the contract itself to determine the parties' intent. A contract must be construed as a whole, viewing each provision in light of the other provisions. The parties' intent is not determined by viewing a clause or provision in isolation, or in looking at detached portions of the contract.

*Thompson v. Gordon*, 948 NE2d 39, 47 (Ill. 2011) (citations omitted).

If the plain language of the contract is unambiguous, then the determination of the parties' intent and the construction of the contract is a question of law for the trial court. *Air Safety v. Teachers Realty Corp.*, 706 NE2d 882, 884 (Ill. 1999); *Interway, Inc. v. Alagna*, 407 NE2d 615, 619 (Ill. App. 1980). "[T]he intention of the parties must necessarily be determined solely from the language used in the document[,]" *Interway, Inc.*, supra at 619, which is "given its plain and ordinary meaning." *Va. Sur. Co. v. Northern Ins. Co. of New York*, 866 NE2d 149, 153 (Ill. 2007). Extrinsic evidence may not be considered. *Air Safety*, 706 NE2d at 884.

If, on the other hand, the language of the contract is ambiguous, "then the determination of its meaning is a question of fact[,]" *Interway, Inc.*, 407 NE2d at 619, and "a court can consider extrinsic evidence to determine the parties' intent." *Thompson*, 948 NE2d at 47. Accord *McCarthy v. Ill. Cas. Co.*, 946 NE2d 895, 903 (Ill. App. 2011); *Quake Constr. v. American Airlines*, 537 NE2d 863, 867 (Ill. App. 1989). This is so even if the contract has a merger or integration clause. See *Gomez v. Bovis Lend Lease*, 22 NE3d 1, 6 (Ill. App. 2013) ("A court may not use extrinsic evidence to interpret a facially unambiguous contract if the contract contains an integration clause. But an integration clause will not preclude the court's

10

consideration of extrinsic evidence in the event the contract is ambiguous.") (citations omitted).

"An ambiguity exists where the language is obscure in meaning through indefiniteness of expression or where the language is reasonably susceptible to more than one meaning." *Bozek v. Erie Ins. Group*, 46 NE3d 362, 367 (II) (Ill. App. 2015). Accord *William Blair & Co. v. FI Liquidation Corp.*, 830 NE2d 760, 769 (II) (B) (Ill. App. 2005). For example, a contract is ambiguous if, due to an indefiniteness of expression, it is difficult to apply the contract language to "the circumstances of the dispute that the contract is supposed to govern." *Gassner v. Raynor Mfg. Co.*, 948 NE2d 315, 328 (II) (B) (2) (Ill. App. 2011). "A contract is not rendered ambiguous merely because the parties disagree on its meaning. On the other hand, a contract is not necessarily unambiguous where, as here, each party insists that the language unambiguously supports its position." *Central Ill. Light Co. v. Home Ins. Co.*, 821 NE2d 206, 214 (Ill. 2004) (citation omitted).

"If the extrinsic facts and circumstances are controverted or if the meaning of the contract is uncertain in light of the extrinsic evidence, the intent of the parties to the contract must be determined as a question of fact by the [factfinder]." *De Lathouwer v. Kewanee Boiler Corp.*, 419 NE2d 688, 692 (Ill. App. 1981) (citation

11

omitted). See also *Wald v. Chicago Shippers Assn.*, 529 NE2d 1138, 1146 (Ill. App. 1988) ("Where extrinsic evidence is introduced to aid in the interpretation of uncertain or ambiguous contract language, the question of the meaning of the language is generally left to the jury."). Summary judgment is only appropriate if the extrinsic evidence is not disputed on the issue of the parties' intent. See *Gomez*, 22 NE3d at 7; *McCarthy*, 946 NE2d at 903; *Nerone v. Boehler*, 340 NE2d 534, 537 (Ill. App. 1976).

(b) *The trial court erred in holding that, as a matter of law, Stonecipher was entitled to the full amount of long-term incentive set forth in the agreement without considering Pangborn's audited financial statements.*

Stonecipher based his claim for breach of contract on the position that the agreement unambiguously entitled him to receive a long-term incentive award in a specified amount, but that Pangborn only paid him a fraction of that amount. The trial court agreed, ruling that Stonecipher was entitled to summary judgment on the contract claim. In so ruling, the trial court held "that the amount and result of the audited financials are inapplicable" to the resolution of Stonecipher's contract claim. This was error, because the plain language of the agreement provides that

Stonecipher's right to receive the specified amount of long-term incentive award was "[s]ubject to audited financials[.]"

"The words 'subject to,' used in their ordinary sense, mean 'subordinate to,' 'subservient to' or 'limited by.'" *Englestein v. Mintz*, 177 NE 746, 752 (Ill. 1931). Accord *G3 Analytics v. Hughes Socol Piers Resnick & Dym Ltd.*, 67 NEed 940, 944 (Ill. App. 2016). The phrase "usually indicates that a promise is not to be performed except upon a condition." *Interway, Inc.*, 407 NE2d at 619 (citation, punctuation and emphasis omitted). The phrase "may have more than one meaning, depending on the circumstances of its use." Id.

In this agreement, the phrase "subject to" clearly conditions or limits Pangborn's obligation to pay Stonecipher the specified amount of long-term incentive award. It provides that the audited financial statements could authorize a departure from the specified amount. So the trial court erred by granting summary judgment to Stonecipher without considering the audited financial statements.

(c) *The agreement is ambiguous as to how the audited financial statements affect the amount of long-term incentive award due to Stonecipher.*

But the agreement contains no explanation of how the audited financial statements are to be considered in determining if there is to be a departure from the

13

amount of long-term incentive award specified in the separation agreement. Nevertheless, both Stonecipher and the defendants argue that under the plain language of the agreement they are entitled to judgment on the contract claim as a matter of law. We are not persuaded by either of those arguments.

First, Stonecipher argues that the provision that the long-term incentive award is "subject to audited financials" merely conditions Pangborn's payment of the specified amount upon the completion of audited financial statements, regardless of their content. But this interpretation, which views the completion of audited financial statements as the event that triggers Pangborn's payment obligation is irreconcilable with the meaning of "subject to," which is detailed above. And this interpretation conflicts with other provisions in the agreement that expressly establish when the monthly payments to Stonecipher would begin. And in disregarding that payment schedule, this proposed construction of the separation agreement runs afoul of the requirement that we "interpret a contract in a manner that gives effect to all of the contract's provisions." *McHenry Sav. Bank v. Autoworks of Wauconda*, 924 NE2d 1197, 1205 (Ill. App. 2010).

Alternatively, Stonecipher proposes that the phrase "subject to audited financials" can be construed to mean that he receives the full amount of the long-term

incentive award unless the audited financial statements reveal something that would disqualify him from receiving any long-term incentive award, such as fraud or theft. This proposed construction may offer the best way to understand the agreement. Certainly, nothing in the record proves otherwise. But this proposed construction requires us to write into the agreement additional terms, which is inconsistent with the rule that, if the language of a contract is unambiguous, we must determine the parties' intent "solely from the language used in the document[.]" *Interway, Inc.*, 407 NE2d at 619. See also *Englestein*, 177 NE at 752 ("Courts may not . . . construe into a contract provisions that are not there."). So we cannot, as a matter of law, construe the agreement in this way based on its plain language, without resort to extrinsic evidence. Moreover, even if this argument had merit, we could not affirm the grant of summary judgment to Stonecipher for this reason because Stonecipher did not make this argument to the trial court. See *Ga.-Pacific v. Fields*, 293 Ga. 499, 504 (2) (748 SE2d 407) (2013) ("right-for-any-reason" rule permits us to affirm for a reason not addressed by the trial court only if the movant raised the issue in the trial court).

The defendants, on the other hand, argue that the phrase "subject to audited financials" means that the amount of the long-term incentive award could change depending upon the content of the audited financial statements. While we agree with

15

this construction, it does not provide any guidance, or key, for determining *how* the contents of the statements would affect the amount of the long-term incentive award.

(d) *The terms of the long-term incentive plan may not be considered in determining how the contents of the audited financial statements affect the long-term incentive award.*

The defendants appear to concede that the plain language of the agreement does not provide the necessary key to determining how the contents of the audited financial statements could affect the amount of long-term incentive award specified in the agreement. Instead, they argue that the terms of the long-term incentive plan must be considered to fill that gap. But the merger clause in the agreement precludes use of the long-term incentive plan's methodology to calculate Stonecipher's long-term incentive award.

The agreement's merger clause provides that the agreement is the parties' "complete understanding" on "all matters affecting [Stonecipher's] employment with [Pangborn] and the termination thereof." And it goes further. The clause also expressly states that the agreement "*supersedes* all prior agreements, understandings and practices concerning such matters, including . . . *incentive or bonus plans* or programs, and any prior customs or practices of [Pangborn]." (Emphasis supplied.)

16

This language unambiguously provides that the long-term incentive award that Pangborn must pay Stonecipher upon the termination of his employment is governed solely by the terms of the separation agreement, *not* the terms of the incentive plan that would have governed the calculation of that award had Stonecipher remained employed. See *Air Safety*, 706 NE2d at 886 ("An integration clause . . . is a clear indication that the parties desire the contract to be interpreted solely according to the language used in the final agreement.").

The defendants argue that the use of the term "Long-Term Incentive" in describing Pangborn's obligation to pay Stonecipher incorporates by reference the long-term incentive plan. But this argument directly conflicts with the explicit language of the merger clause. Moreover, the use of the term "Long-Term Incentive" is not a reference to the long-term incentive *plan*, as the defendants contend. That phrase clearly refers to the long-term incentive *award* Stonecipher is to receive under the agreement — an award that, as discussed above, must be determined without reference to the long-term incentive plan because the agreement expressly supersedes the long-term incentive plan.

(e) *Extrinsic evidence must be considered to resolve the ambiguity and determine the parties' intent.*

Consequently, while the agreement clearly contemplates that audited financial statements may affect Pangborn's obligation in some way, we cannot discern from the plain language of the agreement what the parties intended that effect to be. "[A]mbiguity arises because [the role played by the audited financial statements in calculating Stonecipher's long-term incentive award] is open to differing interpretation. . . . Hence, we cannot ascertain from the four corners of the contract the nature of [that role] and find the contract ambiguous." *Gomez*, 22 NE3d at 6. See also *DeLathouwer*, 419 NE2d at 691 (holding that a contract was ambiguous because it failed to specify certain details needed to implement it); *Nerone*, 340 NE2d at 537 (accord).

Stonecipher asks us to resolve this ambiguity in his favor, because Pangborn drafted the agreement. Illinois, like Georgia, does recognize a rule of construction favoring the nondrafter. See *Dowd & Dowd, Ltd. v. Gleason*, 693 NE2d 358, 368 (II) (A) (Ill. 1998). But in Illinois, unlike Georgia, it is a "secondary rule of construction that should be invoked only *after* . . . a consideration of the extrinsic evidence." *William Blair & Co.*, 830 NE2d at 777-778 (II) (B) (citation and punctuation omitted; emphasis supplied). Compare *Asian Square Partners v. Ly*, 238 Ga. App. 165, 167 (1) (518 SE2d 166) (1999) ("A court should only consider parol or other extrinsic

18

evidence if any ambiguity remains after it has applied the rules of contract construction."). So extrinsic evidence first must be considered to ascertain the parties' intent regarding the "subject to audited financials" phrase. See *Thompson*, 948 NE2d at 47.

Stonecipher did not argue to the trial court that this is a case in which summary judgment is appropriate because the extrinsic evidence pertaining to intent is undisputed. Instead, he argued to the trial court that he was entitled to summary judgment because the agreement's plain, unambiguous language authorized him to receive the full amount of the long-term incentive award specified in the agreement. We cannot affirm a grant of summary judgment for a reason not raised below. See *Ga.-Pacific*, 293 Ga. at 504 (2) (the "right-for-any-reason" rule may be invoked to affirm a judgment only if the issue was raised in the trial court). So although Stonecipher has, on appeal, pointed to extrinsic evidence that he contends shows the parties' intent,[2] we do not consider whether that evidence would support the grant of partial summary judgment to him.

---

[2] For example, in a supplemental appellate brief Stonecipher argues that, even though audited financial statements had not yet been completed, the defendants "were well aware of [Pangborn's] earnings at the time they entered into the [a]greement."

The defendants did argue below, and continue to argue on appeal, that undisputed extrinsic evidence supported summary judgment in their favor on the contract claim. But the evidence they point to is the terms of the long-term incentive plan. As discussed above, that evidence cannot be considered under the plain language of the agreement's merger clause, so it does not provide a ground for reversing the trial court's denial of the defendants' cross-motion for summary judgment on the contract claim.

(f) *Conclusion.*

In summary, the trial court erred in holding that Stonecipher was entitled to partial summary judgment on his claim for breach of contract. The agreement in this case cannot be construed without considering the audited financial statements and without resort to extrinsic evidence of how the parties intended the audited financial statements to affect the amount of long-term incentive award that Pangborn owed Stonecipher. Under the terms of the agreement, that extrinsic evidence cannot include the terms of the long-term incentive plan or its method of calculation.

So we reverse the grant of partial summary judgment to Stonecipher on his claim for breach of contract and affirm the denial of summary judgment to the defendants on that claim.

4. *Breach of the duty of good faith and fair dealing.*

The defendants argue that they are entitled to summary judgment on Stonecipher's claim for breach of the duty of good faith and fair dealing implied in the parties' agreement. The parties agree that Georgia law governs this cause of action. Under Georgia law,"[e]very contract imposes upon each party a duty of good faith and fair dealing in its performance and its enforcement." *280 Partners v. Bank of North Ga.*, 352 Ga. App. 605, 610 (1) (b) (ii) (835 SE2d 377) (2019) (citation and punctuation omitted). The defendants base their argument in large part upon the principle that "there can be no breach of an implied covenant of good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do." Id. (citation and punctuation omitted). This argument does not support summary judgment to the defendants because, for the reasons discussed above, a question of fact exists as to whether they breached the agreement in this case.

We are also unpersuaded by the defendants' arguments that, even if there is a jury question as to breach of contract, there is no evidence of a breach of the duty of good faith and fair dealing. As discussed above, the agreement unambiguously superseded the long-term incentive plan. There is no room for construction on that particular point. Nevertheless, the evidence, viewed in the light most favorable to

21

Stonecipher, shows that the defendants refused to pay him the award amount specified in the agreement because the long-term incentive plan called for a different amount. A jury could infer from this evidence that the defendants acted in bad faith. See *Planning Technologies v. Korman*, 290 Ga. App. 715, (660 SE2d 39) (2008) ("a contract may be so patently clear and explicit on a given point that any construction different from its obvious and exclusive meaning would constitute a gross mistake or error," creating an inference of bad faith) (citation and punctuation omitted).

5. *Attorney fees.*

We also find no merit in the defendants' argument that they are entitled to summary judgment on Stonecipher's claim for attorney fees under OCGA § 13-6-11, which permits fees "where the defendant has acted in bad faith, has been stubbornly litigious, or has caused the plaintiff unnecessary trouble and expense[.]" The existence of these statutory grounds "is usually a jury question, and only in the rare case where there was absolutely no evidence to support the award of expenses would the trial court be authorized to grant summary adjudication on such issues." *Brito v. Gomez Law Group*, 289 Ga. App. 625, 628 (2) (658 SE2d 178) (2008) (citations and punctuation omitted). This is not such a rare case. At the very least, there is a fact

22

question as to whether the defendants acted in bad faith for the reasons discussed above.

*Judgment affirmed in part and reversed in part. Brown and Markle, JJ., concur*.