S01A1732. CITY OF BREMEN et al. v. REGIONS BANK et al.
(559 SE2d 440)

SEARS, Presiding Justice.

The City of Bremen, Georgia ("City"), appeals the trial court's grant of summary judgment in favor of Regions Bank of Cedartown, Georgia, holding the City liable for the payment of a $1 million loan issued by Regions Bank, plus interest, penalties and attorney fees. Having reviewed the record and considered the parties' arguments, we conclude that the loan was a valid exercise of the City's temporary borrowing power under the Georgia Constitution, and that the tax anticipation note executed by the City as security for the loan was valid on its face and an enforceable obligation. We also conclude that Regions Bank satisfied its due diligence obligations in connection with its making of the loan. There being no disputed material facts regarding these issues and Regions Bank being entitled to recover on the note as a matter of law, we affirm the trial court's grant of summary judgment.

In the latter half of 1998, the City, along with the Development Authority of Bremen, sought financing for the construction of the Turkey Creek Golf Course, a municipal golf course to be built in the existing Bremen Industrial Park. The 400 acres underlying the

Industrial Park had been purchased in 1979, and because environmental regulations had made the acreage unsuitable for industrial development, it was decided that the property should be developed as a golf course. Funding for the golf course's construction was to be generated by revenue bonds issued by the Development Authority.

The City's Administrator, Kim Jones, also served as Executive Director of the Development Authority. In January 1999, the City Council authorized Jones to temporarily borrow up to $2 million as interim financing for "various City purposes and projects," and Jones began negotiations with Regions Bank. In deposition testimony, Jones, the City's mayor pro-tem, a City councilman, and the Development Authority's attorney all conceded that by authorizing this loan, the City Council intended to finance construction of the Turkey Creek Golf Course.

Thereafter, the City Council passed a resolution authorizing a $250,000 loan from Regions Bank to finance "certain municipal projects and operations of the City government of . . . Bremen, Georgia." As security for the loan, the City's mayor pro-tem executed a tax anticipation note in the amount of $250,000 in favor of Regions Bank. The City's Attorney issued an opinion letter to Regions Bank stating that the City was authorized to borrow the $250,000, and that a tax anticipation note, once executed as security for the loan, would be a valid and binding debt of the City. The City Council unanimously approved the loan, and the mayor pro-tem executed a tax anticipation note for $250,000 in favor of Regions Bank.

One week later, the City Council passed a second resolution authorizing a $1 million short-term loan from Regions Bank, again to finance "certain municipal projects and operations of the City government of . . . Bremen, Georgia," and again to be secured by a tax anticipation note. The City Council again unanimously approved the loan, and the mayor pro-tem executed a tax anticipation note for $1 million on behalf of the City and in favor of Regions Bank. The note stated that it was given for the "short term borrowing of operating monies and obligations as might be needed" by the City, and was executed "in accordance with the provisions of Article IX, § 5, para. 5 of the Georgia Constitution [the Temporary Borrowing Clause]." The note also provided that in the event the City defaulted on the loan, Regions Bank was authorized to seek remedy under the Uniform Commercial Code.[1] In conjunction with the note's execution, the mayor pro-tem certified that the $1 million loan would be used to pay the City's current expenses for calendar year 1999. The City attorney's opinion regarding the $1 million loan was the same as his opin-

---

[1] OCGA § 11-1-101 et seq.

ion regarding the $250,000 loan.[2]

The City used a portion of the $1 million loan to repay the $250,000 loan, with interest. Thereafter, the City transferred much of the remaining loan proceeds from its general fund to the Development Authority, which used the money to pay for work performed on the golf course project. By its terms, the tax anticipation note was due to be paid no later than December 31, 1999. However, the City renewed the loan twice, and each time made an interest payment from its general treasury in the amount of $13,928.

It appears that the City spent no less than $330,000 from its own treasury on the golf course construction project. A number of bills for construction work performed on the golf course were addressed to the "City of Bremen" and were mailed directly to Jones in her capacity as City Administrator. Working on behalf of both the City and the Development Authority, Jones signed contracts, wrote checks, and supervised administrative matters concerning the golf course project. Jones, the City's mayor pro-tem, the City's attorney, and member of the City council have all conceded that construction of the Turkey Creek Golf Course was a joint project between the City and the Development Authority.

After this Court's ruling in *Haney v. Development Auth. of Bremen*,[3] the City Council voted to raise the City's ad valorem tax millage rate in order to pay off the $1 million loan owed to Regions Bank. However, that vote was reversed in anticipation of selling the golf course to a private investor. In December 1999, the Council twice voted to repay the loan in its entirety. Despite those resolutions, the loan remained unpaid.

Regions Bank sued the City for payment of the principal and accrued interest owed under the note, as well as for penalties and attorney fees. The trial court granted Regions Bank's motion for partial summary judgment, found the City liable on the note and ordered the City to repay the loan, plus interest, penalties, and attorney fees in the amount of $1,264,929.71, with interest accruing daily.

1. Taking out the $1 million loan was a valid exercise of the City's temporary borrowing power under the Georgia Constitution, and the tax anticipation note executed by the City as security for the loan was valid on its face and an enforceable obligation. As explained

---

[2] The City Attorney did not issue a second opinion letter regarding the $1 million loan, but later testified that his opinion regarding that loan was the same as his opinion regarding the $250,000 loan.

[3] 271 Ga. 403 (519 SE2d 665) (1999). In *Haney*, the Development Authority sought to validate revenue bonds in order to finance the construction of Turkey Creek Golf Course. After the superior court validated the bonds, this Court reversed, ruling that the construction of a golf course was not a proper "project" for a bond referendum under OCGA § 36-62-2. 271 Ga. at 408.

below, our State Constitution recognizes that municipalities may sometimes be required to temporarily borrow funds in order to finance certain projects or to pay certain expenses. Our State Code specifically acknowledges that such loans may be secured by the municipality's anticipated tax revenues for the year in which the money is borrowed.

The Georgia Constitution provides that a city or county may obtain "temporary loans in each year to pay expenses,"[4] so long as: (1) The total amount of all such temporary loans does not exceed 75% of the gross amount of taxes collected in the preceding year; (2) The temporary loan is payable on or before December 31 of the year in which it is made; (3) The municipality has no other temporary loans from previous years that remain unpaid; and (4) The temporary loan is for no more than the total anticipated revenue for the municipality for the year in which it is made.[5] In the present case, none of these enumerated limitations on the constitutional authority of a municipality to engage in temporary borrowing precluded the City from executing the tax anticipation note as security for the $1 million loan from Regions Bank.[6] The City certified in the loan package that loan proceeds would be used to pay its then-current expenses. Accordingly, based upon the City's own representations, the short-term loan from Regions Bank was a valid exercise of the City's temporary borrowing powers under the Georgia Constitution.

Moreover, the Georgia Code confers upon municipalities that are authorized to levy taxes the power "to issue notes, certificates, or other evidence of indebtedness in anticipation of the collection of taxes levied or to be levied during the calendar year."[7] Accordingly, the City had statutory authority to execute the tax anticipation note as security for the $1 million loan from Regions Bank.[8] On its face, the tax anticipation note states that it was executed under the authority of the Constitution's Temporary Borrowing Clause and

---

[4] Ga. Const. (1983), Art. IX, Sec. V, Par. V.

[5] Id.

[6] As part of the loan package, the City's mayor pro-tem certified: (1) that the gross amount of taxes collected in 1998 was over $3 million, and thus the $1 million loan plus any prior notes did not exceed 75% of that amount; (2) that the total amount of anticipated tax revenues for 1999 exceeded $1 million; and (3) that the City had no temporary loans from previous years that remained unpaid. By its own terms, the note required that the loan be repaid no later than December 31, 1999.

[7] OCGA § 36-80-2.

[8] Contrary to the City's argument, the loan was not a "debt" within the meaning of the Georgia Constitution, Art. IX, Sec. V, Par. I. See *Rawls v. City of Jonesboro*, 212 Ga. 734, 736 (95 SE2d 657) (1956) ("a municipality may incur liability for a legitimate expense . . . without creating a debt [under the State Constitution], provided . . . a sufficient amount to discharge the liability can be raised by taxation during the current year."); *Austin-Westin Rd. Machinery Co. v. Fayette County*, 99 F2d 565 (5th Cir. 1938) (same).

that the money was borrowed for legitimate expenditures.

This Court has previously held that when a political subdivision of the state has constitutional authority to borrow money and does so by giving a promissory note stating the nature of that authority and also stating that the money is being borrowed for a legal purpose, the borrower is estopped from claiming that the note is unconstitutional and therefore unenforceable.[9] In the present matter, the City's tax anticipation note warranted that the $1 million was being borrowed in order to provide current "operating monies and obligations as might be needed" by the City, and also stated that the note was executed "in accordance with the provisions of Article IX, § 5, para. 5 of the Georgia Constitution [the Temporary Borrowing Clause]." Accordingly, the note is valid on its face and under this Court's precedent, the City should be estopped from challenging the constitutionality of the tax anticipation note issued as security for the $1 million loan.

2. Nonetheless, the City argues that three written agreements between it and the Development Authority exceeded the scope of the State Constitution's Intergovernmental Contracts Clause.[10] The City claims that because these agreements are unconstitutional and unenforceable, they cannot provide a basis for imputing responsibility for the $1 million loan to the City. However, as the City concedes, two of these written agreements were never executed between it and the Development Authority. Accordingly, they can have no bearing on the City's binding obligations in this matter.

The one written agreement that was executed by the Development Authority and the City provides that the City would advance $200,000 to the Development Authority in order for the Authority to pay debts owed for the golf course's construction. This agreement, however, was executed three months *after* the City executed its tax anticipation note as security for Regions Bank's $1 million loan, and has no bearing upon the enforceability of that note. By the time this agreement was executed, the City had obtained the loan proceeds in exchange for the tax anticipation note, and how the City managed and expended that money is irrelevant to the issue of its obligation to repay the loan. We are aware of no authority that would permit the City to avoid its responsibility under the note due to its use and management of the loan proceeds in the months following the note's exe-

---

[9] *Citizens Bank of Moultrie v. Rockdale County*, 152 Ga. 711, 720 (111 SE 434) (1922) (addressing the predecessor to Art. IX, Sec. V, Par. V of our current Constitution, which permitted temporary borrowing to supply "casual deficiencies of revenue"). See *City of Jefferson v. Holder*, 195 Ga. 346, 356 (24 SE2d 187) (1943); *Wallace & Tiernan Co. v. Williams*, 192 Ga. 149, 151-152 (14 SE2d 747) (1941).

[10] Ga. Const. (1983), Art. IX, Sec. III, Par. I.

cution, and we reject the City's urging that we craft such a ruling here.

Construed by its plain terms, the agreement between the City and the Development Authority is entirely consistent with the testimony of City officials (discussed supra) that construction of the golf course was a joint project of the City and the Authority. As noted, the record is replete with invoices, statements and bills concerning the golf course that were sent directly to the City and its Administrator, and the City Administrator issued checks to pay those bills. By agreeing to transfer money to the Development Authority for it to pay its own bills on the golf course project, the City essentially performed this same "financier" function. Accordingly, we conclude the written agreement between the City and the Authority provides further evidence of their status as joint participants in the golf course's construction.

3. In an attempt to assert a "negligent lending" claim, the City contends that Regions Bank failed to exercise due diligence to ascertain the accuracy of the certifications made by the City in conjunction with its execution of the tax anticipation note. Had the Bank exercised due diligence, the City argues, it would have discovered that because the loan proceeds were not intended for a proper purpose (i.e., current expenses), the tax anticipation note could not be valid and binding. While we do not attempt to define the entire scope of Regions Bank's duty of due diligence in this matter, we reject the City's argument that Regions Bank's diligence was lacking because it relied upon the City's certifications regarding the loan's purpose.

An organization such as a bank is deemed to have notice of a fact relative to a particular transaction when that fact would have been brought to the organization's attention, had it exercised due diligence.[11] However, in conducting such due diligence, we are unaware of any precedent that requires a lender to "go behind" a borrower's affirmative representations and determine their accuracy. Rather, we believe that a lender's obligation of due diligence permits it to reasonably rely upon a borrower's representations made in conjunction with the loan. Under normal circumstances, a lender is required to investigate only those situations where the information known to the lender at the time of making the loan would lead a reasonable person in a similar situation to suspect that one or more of the borrower's material representations is substantially inaccurate.[12] Under normal

---

[11] OCGA § 11-1-201 (27) (taken verbatim from UCC § 1-201 (27)).

[12] See *United States v. Coconut Grove Bank*, 545 F2d 502, 506-507 (5th Cir. 1977). *Coconut Grove Bank* addressed whether the defendant bank violated its duty of due diligence to determine if a borrower would be able to pay employment taxes as required by the Internal Revenue Code. Relying upon UCC § 1-201 (27) (see note 11, supra), the Fifth Circuit held

circumstances, however, a lender does not have an affirmative obligation to obtain information from outside its own organization before making a loan.[13] Nor is the lender normally required to determine whether the intended purpose of a loan is at odds with the borrower's representations in the loan package.[14]

As explained above, prior to making the $1 million loan, Regions Bank required the City to certify that all of the legal requirements for a temporary loan to a municipality were satisfied.[15] Moreover, the City certified to the Bank that the money borrowed would be used for proper purposes.[16] Having obtained these certifications, and not being in possession of suspicious knowledge that contradicted the City's representations, we conclude that Regions Bank did not violate its duty of due diligence in this matter.

4. This Court's decision in *Haney v. Development Authority of Bremen*,[17] does not shield the City from its obligation to repay the loan. As explained above, *Haney* held that the Turkey Creek Golf Course project did not fall within the scope of the statute authorizing a development authority to issue revenue bonds in order to obtain financing for the construction of certain projects.[18] From this ruling, the City argues that the tax anticipation note at issue in this appeal is not binding because the funds issued thereunder were not used for a legal purpose.

The *Haney* ruling, however, does not address whether the City was authorized under the Georgia Constitution's Temporary Lending Clause and OCGA § 36-80-2 to borrow money for expenses and to execute a tax anticipation note as security for that loan. Merely because the golf course was not the type of project that could legally be financed through the Development Authority's issuance of revenue bonds, it does not automatically follow that the City could not temporarily borrow the money needed to satisfy its then-current expenses relating to "certain municipal projects and operations of the City government of . . . Bremen, Georgia," as certified by the City in the loan package. Nor does the *Haney* ruling touch upon the City's ability to secure its loan with a tax anticipation note. Accordingly,

---

that the bank would not be required to investigate beyond what was known within its own organization at the time of the loan. Moreover, only if the bank was in possession of information that would raise the suspicions of a normal person regarding the borrower's representations would the bank have a duty to investigate beyond its own organization. Id.

[13] *Coconut Grove Bank*, 545 F2d at 506-507.

[14] See id., 545 F2d at 507.

[15] See p. 736, supra.

[16] Bank officials testified they believed the City would use the money lent for operating monies and to satisfy the City's current obligations, as certified at the time of the loan's making.

[17] 271 Ga. 403, supra.

[18] See note 3, supra.

our ruling in *Haney* does not excuse the City from its liability under the note.

5. A creditor in possession of a valid and signed promissory note has a prima facie right to repayment, unless the debtor can establish a valid defense.[19] A debtor cannot defeat this prima facie right of repayment by denying the debt for general reasons; it must assert a valid affirmative defense, such as estoppel or illegality.[20]

As explained above, the tax anticipation note in this matter was properly executed and is valid on its face. As such, it was an authorized exercise of the City's temporary borrowing power under the Georgia Constitution, and is an enforceable obligation. Moreover, the City has failed to assert a legitimate affirmative defense to Regions Bank's right to recover under the note. Even when viewed in a light most favorable to the City,[21] there are no disputed material facts regarding the City's obligations under the note, and as a matter of law, Regions Bank is entitled to recover the loan proceeds secured by the note. It follows that the trial court properly entered summary judgment in Regions Bank's favor.

*Judgment affirmed. All the Justices concur.*

DECIDED FEBRUARY 4, 2002.

*Cook & Connelly, Bobby Lee Cook, Mullins, Whalen & Westbury, Andrew J. Whalen III,* for appellants.

*Shaw, Maddox, Graham, Monk & Boling, Michael D. McRae, Robert T. Monroe,* for appellees.

*Powell, Goldstein, Frazer & Murphy, C. Scott Greene, Heather E. Harper,* amici curiae.

---

[19] OCGA § 11-3-308 (b); *Hovendick v. Presidential Financial Corp.,* 230 Ga. App. 502, 503 (497 SE2d 269) (1998).

[20] *Freezamatic Corp. v. Brigadier Industries Corp.,* 125 Ga. App. 767, 768 (189 SE2d 108) (1972).

[21] See *Lau's Corp. v. Haskins,* 261 Ga. 491 (405 SE2d 474) (1991).