A11A1466. GRIFFIN et al. v. STATE BANK OF COCHRAN.
A11A1467. STATE BANK OF COCHRAN v. MAL RENTALS, LLC et al.
(718 SE2d 35)

MILLER, Presiding Judge.

State Bank of Cochran d/b/a First Laurens Bank ("FLB") filed suit against MAL Rentals, LLC and Loretta M. Griffin to collect on a promissory note. In their answers to the complaint, MAL Rentals and Griffin raised several defenses, including estoppel. Griffin also asserted a counterclaim, alleging fraudulent inducement and securities fraud in violation of the former Georgia Securities Act of 1973. FLB filed a motion for summary judgment as to its collection claims and the counterclaim. The trial court denied FLB's motion as to its collection claims, but granted the motion as to the counterclaim. These cross-appeals then ensued.

In Case No. A11A1466, Griffin contends that the trial court erred in granting FLB's motion for summary judgment as to her counterclaim. In Case No. A11A1467, FLB contends that the trial court erred in denying its motion for summary judgment as to its collection claims alleging breach of the promissory note and guaranty and entitlement to attorney fees. For the reasons that follow, we affirm the grant of summary judgment in FLB's favor as to the counterclaim in Case No. A11A1466; we reverse the denial of summary judgment in FLB's favor as to its collection claims in Case No. A11A1467.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. OCGA § 9-11-56 (c). A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.

(Footnote omitted.) *Baxter v. Fairfield Financial Svcs.*, 307 Ga. App. 286, 287 (704 SE2d 423) (2010).

So viewed, the record evidence shows that in 2002, Griffin began serving as a member of the board of directors of Community Bank of West Georgia ("CBWG" or "the bank") and its holding company, Community Bancshares of West Georgia, Inc. ("Community Bancshares") (collectively, "the boards"). Griffin regularly attended the board meetings, served as the chairperson of several of the board's committees, and made it a practice to know about the financial positions of CBWG and Community Bancshares. While serving on the boards in 2003, Griffin made an investment by purchasing common stock in Community Bancshares.

In 2006, the boards decided to hire a consultant, Charles Stevens, to advise them regarding CBWG and Community Bancshares operations and to assist in their efforts to sell the CBWG bank. Stevens provided consultancy services to the boards through his company, Stevens & Company. In addition to operating his consulting company, Stevens also served as a member of the advisory board of FLB.

At some point while Stevens was serving as the boards' consultant, Stevens informed the boards' members that a sale of CBWG was imminent and that interested purchasers had been performing due diligence in anticipation of buying CBWG. Pending a potential sale, however, additional capital was necessary to fund CBWG's continuing operations. According to Griffin, Stevens advised the boards' members to purchase additional shares of stock in order to generate the necessary capital. Griffin followed Stevens's recommendation and purchased additional Community Bancshares stock in 2007 and 2008.

Griffin gave deposition testimony that she obtained a loan from FLB in order to make her 2007 and 2008 stock purchases.[1] Thereafter, Griffin transferred the stock into the name of MAL Rentals, a company that she owned and operated.

In May 2009, FLB agreed to refinance Griffin's original loan. The refinanced loan was placed in the name of MAL Rentals as the debtor. On behalf of MAL Rentals, Griffin executed a promissory note ("the Note") that set forth the terms of the refinanced loan. Griffin also executed a security agreement that pledged the stock as

---

[1] The record contains contradictory evidence as to which banking entity financed Griffin's 2007 and 2008 stock purchases. Contrary to Griffin's deposition testimony, FLB submitted an affidavit from its assistant vice president indicating that Griffin's original loan for the stock purchases was made by another entity, Bankers Bank (Silverton). In light of the summary judgment standard, however, we view the evidence in the light most favorable to Griffin, the nonmovant. See *Baxter*, supra, 307 Ga. App. at 287.

collateral securing the refinanced loan. In addition, Griffin signed a personal guaranty ("the Guaranty") accepting unconditional liability for repayment of the loan, including "all principal, accrued interest, attorneys' fees and collection costs[.]"

Pursuant to the terms of the Note, FLB made MAL Rentals a loan in the amount of $249,542.50. The loan was to be repaid on May 11, 2010, with interest accruing at a rate of 6.000 percent per annum. "After maturity or acceleration [of the Note], interest . . . accrue[d] on the unpaid [p]rincipal balance . . . at 18.000 percent until paid in full." The Note further defined several conditions of default, including in pertinent part, MAL Rentals's "fail[ure] to make a payment in full when due" and FLB's "determin[ation] in good faith that the value of the [collateral] has declined or is impaired." In the event of a default, the Note authorized FLB to accelerate the Note, making all or any part of the amount owed immediately due. Upon default, FLB was also authorized to recover all expenses related to collection of the debt, including "attorneys' fees, court costs, and other legal expenses." The Note specified that the amount of attorney fees owed would be "15 percent of the [p]rincipal and interest owing[.]" The Note further contained an "Integration" clause, stating that "th[e] Note and the other Loan Documents [were] the complete and final expression of the agreement" between the parties. The Guaranty contained a similar "Integration" clause.

In June 2009, CBWG was closed by the Georgia Department of Banking and Finance, and the Federal Deposit Insurance Corporation was named as receiver. In light of CBWG's closure, FLB determined that the stock collateral securing the debt was rendered worthless, and thus, a condition of default had occurred pursuant to the terms of the Note. On July 28, 2009, FLB sent Griffin a letter notifying her that a default had occurred since "the collateral decline[d] in value." The letter required Griffin to provide substitute collateral within ten days and advised her that FLB would honor the repayment terms of the Note, conditioned upon her substitution of collateral meeting the margin requirements of the security agreement. Griffin and MAL Rentals failed to provide substitute collateral, as requested. On September 1, 2009, FLB sent Griffin a second letter, again requesting that MAL Rentals cure the default within ten days by substituting adequate collateral. The second letter further advised that the debt had been accelerated so as to render the debt immediately due and payable and that upon failure to cure the default or to pay the accelerated balance, FLB would pursue its legal remedies, including collection of the unpaid balance, late fees, attorney fees, collection costs, and interest.

When MAL Rentals and Griffin still failed to provide substitute collateral or repay the indebtedness, FLB filed the instant collection

lawsuit to enforce the terms of the Note and the Guaranty. FLB's complaint alleged claims for breach of the Note, breach of the Guaranty, and entitlement to attorney fees. MAL Rentals and Griffin raised several defenses, including estoppel. Griffin also asserted a counterclaim, alleging fraudulent inducement and securities fraud in violation of the former Georgia Securities Act of 1973. FLB filed a motion for summary judgment. The trial court denied FLB's motion as to its collection claims, but granted the motion as to Griffin's counterclaim.

## Case No. A11A1466

1. Griffin contends that the trial court erred in granting summary judgment in FLB's favor as to her counterclaim for fraudulent inducement and securities fraud. We discern no error.

(a) "The tort of fraud has five elements: a false representation by a defendant, scienter, intention to induce the plaintiff to act or refrain from acting, justifiable reliance by plaintiff, and damage to plaintiff." (Citations and punctuation omitted.) *Fuller v. Perry*, 223 Ga. App. 129, 131 (1) (476 SE2d 793) (1996). To survive a motion for summary judgment, Griffin was required to present some evidence of each element of the fraud tort. See id. The grant of summary judgment was proper if one essential element of the claim was eliminated. See id.

Here, Griffin's fraud claim was based, in part, upon Stevens's alleged misrepresentation that CBWG was going to sell, which purportedly induced Griffin to obtain the loan for her purchase of additional stock used to fund CBWG's continued operations pending a potential sale. Griffin's claim in this regard, however, was legally inactionable.

Regardless of whether Stevens's alleged misrepresentation could be attributed to FLB,[2]

> [i]t is axiomatic that a false representation made by a

---

[2] The undisputed direct evidence established that Stevens was not acting on behalf of, or as an agent of, FLB when he provided consultancy services to the boards. Stevens attested that during his provision of services to the boards, he was working solely in his capacity as a representative of his company, Stevens & Company. Griffin similarly testified that when Stevens was serving as a consultant, he was acting alone in his own company. Griffin nevertheless argues that FLB is liable for Stevens's misrepresentations to the extent that it subsequently ratified Stevens's actions in making the loan. See OCGA § 10-6-1 ("The relation of principal and agent arises wherever one person, expressly or by implication, authorizes another to act for him or subsequently ratifies the acts of another in his behalf."); *Multi-Media Holdings v. Piedmont Center, 15 LLC*, 262 Ga. App. 283, 284 (1) (583 SE2d 262) (2003) ("Whether a ratification occurred is generally a question of fact for the jury. Ratification may occur if a business entity accepts the benefits of an act done by another on its behalf, although that person had no actual or apparent authority to act for the business.") (citation

> defendant, to be actionable, must relate to an existing fact or a past event. Fraud cannot consist of mere broken promises, unfilled predictions or erroneous conjecture as to future events. Representations concerning expectations and hopes are not actionable.

(Citations and punctuation omitted.) *Fuller*, supra, 223 Ga. App. at 131 (1). Griffin's deposition testimony acknowledged that she was aware that no final sale of CBWG had occurred at the time of the alleged misrepresentation and when she obtained the loan. The evidence reflected that Stevens's alleged prediction that CBWG was going to sell amounted to mere prospect, expectation or erroneous conjecture. As such, the representation was not actionable. See id.

"It is true that claims of fraud arising from a representation of a future event made with knowledge that it is false or intention not to perform may be actionable." (Citation omitted.) *Fuller*, supra, 223 Ga. App. at 131-132 (1). Griffin, however, has pointed to no evidence showing that Stevens made the alleged representation with knowledge that a sale would not occur or intention that a sale would not be finalized. "Bare conclusions and contentions unsupported by an evidentiary basis in fact are insufficient to oppose a motion for summary judgment." (Footnote omitted.) *Johnson v. First Union Nat. Bank*, 255 Ga. App. 819, 824 (6) (567 SE2d 44) (2002).

Griffin also characterizes Stevens's recommendation to invest more capital in CBWG as a misrepresentation. Griffin, however, has not presented any evidence that Stevens's recommendation amounted to a false representation. Indeed, Griffin has neither asserted nor pointed to any evidence indicating that Stevens misrepresented or falsely informed Griffin about CBWG's financial condition. Rather, consistent with Stevens's alleged representation, Griffin's deposition testimony acknowledged that additional capital was necessary in order to continue CBWG's operations and that it was up to the boards' members to generate the funds needed.

Moreover, Griffin has not shown that she justifiably relied upon the representation. "Misrepresentations are not actionable unless the complaining party was justified in relying thereon in the exercise of common prudence and diligence." *GCA Strategic Investment Fund v. Joseph Charles & Assocs.*, 245 Ga. App. 460, 464 (3) (537 SE2d 677) (2000). We have held that

> as a matter of economic and social policy, third parties should be encouraged to rely on their own prudence, dili-

---

and punctuation omitted). A determination of this issue, however, is unnecessary to resolve this appeal.

gence, and contracting power, as well as other informational tools. This kind of self-reliance promotes sound investment and credit practices and discourages the careless use of monetary resources.

(Citation and punctuation omitted.) *White v. BDO Seidman, LLP*, 249 Ga. App. 668, 672-673 (1) (549 SE2d 490) (2001). The evidence shows that as a member of the boards, Griffin had knowledge and access to information about CBWG's and Community Bancshares's financial positions. Griffin conceded that she was privy to all information necessary to make the stock investment decision. "Therefore, [Griffin was] in at least as good a position as the [FLB] to analyze [CBWG's and Community Bancshares's] financial condition, and [her] failure to investigate the matter showed a lack of due diligence." (Punctuation and footnote omitted.) *Baxter*, supra, 307 Ga. App. at 294 (4). See also *Bogle v. Bragg*, 248 Ga. App. 632, 636 (1) (548 SE2d 396) (2001) (in light of the investor's knowledge about the operational history of the company, he did not show that he justifiably relied upon alleged misrepresentations in connection with his purchase of the company's stock).

Griffin's attempt to implicate FLB in her investment decision also fails since "no confidential relationship exists between a bank and its customers or others with whom the bank deals." (Citations omitted.) *Lilliston v. Regions Bank*, 288 Ga. App. 241, 244 (1) (653 SE2d 306) (2007). "[W]e have held that a bank has no duty to advise a party who is contemplating serving as the guarantor for a bank loan about problems with the viability of the business venture financed by the loan." (Citations omitted.) Id.

For each of these reasons, Griffin's fraud claim was unsubstantiated, and FLB was entitled to the grant of summary judgment on the claim.

(b) Likewise, we conclude that summary judgment was properly granted in favor of FLB as to Griffin's securities fraud claim. Griffin's counterclaim alleged that FLB's actions in the loan transaction violated the provisions of the former Georgia Securities Act of 1973.[3] She cited to OCGA § 10-5-12 (a) (2) of the former Act, which provided as follows:

It shall be unlawful for any person . . . (i)n connection with an offer to sell, sale, offer to purchase, or purchase of any

---

[3] Effective July 1, 2009, this chapter was amended and became known as the "Georgia Uniform Securities Act of 2008." See OCGA § 10-5-1; Ga. L. 2008, p. 381, § 1. Since the transactions forming the basis of the counterclaim occurred prior to July 1, 2009, Griffin relies upon the provisions of the former Georgia Securities Act of 1973.

security, directly or indirectly: (A) To employ a device, scheme, or artifice to defraud; (B) To make an untrue statement of a material fact or omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they are made, not misleading; or (C) To engage in an act, practice, or course of business that operates or would operate as a fraud or deceit upon a person.

*Fernandez v. WebSingularity, Inc.*, 299 Ga. App. 11, 17 (5) (681 SE2d 717) (2009) (quoting provisions of former statute).

Regardless of the propriety of Griffin's argument that the events surrounding her loan transaction fell within the purview of the Act,[4] her claims lacked merit for the same reasons that her common law fraud claim failed. Significantly, "common law and securities fraud [under former OCGA § 10-5-12 (a)] require the same elements[.]" (Footnote omitted.) *Keogler v. Krasnoff*, 268 Ga. App. 250, 254 (1) (601 SE2d 788) (2004). As explained in Division 1 (a) above, Griffin failed to produce any evidence of either actionable misrepresentations or justifiable reliance, which were elements required to support her claim. The trial court's decision granting FLB's motion for summary judgment as to Griffin's counterclaim for securities fraud was proper.

### Case No. A11A1467

2. In its cross-appeal, FLB contends that the trial court erred in denying its motion for summary judgment as to the claims in its complaint. We agree.

FLB's complaint alleged that MAL Rentals breached the Note and that Griffin breached the Guaranty. FLB claimed entitlement to be repaid in accordance with the terms of the loan, including the payment of attorney fees.

A creditor in possession of a valid and signed promissory note has a prima facie right to repayment, unless the debtor

---

[4] Griffin's counterclaim appears to assert that FLB is liable for securities fraud to the extent that it acted jointly and in concert with Stevens, who represented that CBWG would sell and recommended that she make the 1997 and 1998 stock purchases. FLB, however, claims that the stock purchase transactions were between Griffin and Community Bancshares. FLB disclaims any involvement in the stock purchases, except for the fact that it loaned Griffin the funds to pay for the 1997 and 1998 stock purchases. See *Plunkett v. Francisco*, 430 FSupp. 235, 240 (N.D. Ga. 1977) (concluding that the evidence failed to show that defendant violated the former Georgia Securities Act since he clearly was not the person making the sale or contract for sale in the securities transaction).

can establish a valid defense. A debtor cannot defeat this prima facie right of repayment by denying the debt for general reasons; it must assert a valid affirmative defense, such as estoppel or illegality.

(Footnotes omitted.) *City of Bremen v. Regions Bank*, 274 Ga. 733, 740 (5) (559 SE2d 440) (2002). Under OCGA § 13-1-11 (a) (1), the provisions of a promissory note authorizing the collection of attorney fees "shall be valid and enforceable up to but not in excess of 15 percent of the principal and interest owing on said note or other evidence of indebtedness[.]"

MAL Rentals and Griffin admitted that they entered the Note and the Guaranty at issue and that they failed to pay their respective financial obligations. Based upon these admissions, FLB established a prima facie right to repayment. See *City of Bremen*, supra, 274 Ga. at 740 (5).

MAL Rentals and Griffin nonetheless raised the defenses of estoppel and breach of an implied duty of good faith and fair dealing in opposition to FLB's motion for summary judgment.[5] The evidence, however, failed to support either of the alleged defenses.

(a) MAL Rentals and Griffin based their estoppel defense on Stevens's alleged misrepresentation that CBWG would sell. They further alleged that FLB had previously represented that it would continue to honor the terms of the Note, but failed to do so when it accelerated the Note and declared the Note to be in default.

"In order for an equitable estoppel to arise, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence as to amount to constructive fraud, by which another has been misled to his injury." OCGA § 24-4-27. Similarly, promissory estoppel, codified at OCGA § 13-3-44[6] requires proof that

(1) the defendant made a promise or promises; (2) the defendant should have reasonably expected the plaintiff to rely on such promise; (3) the plaintiff relied on such promise

---

[5] MAL Rentals and Griffin also raised the defenses of failure of consideration and illegality. However, they did not present any argument as to those claims in the trial court below or in this appeal. As such, these defenses have been abandoned. We do not address grounds that were neither argued on appeal nor ruled upon by the trial court below. See *Mandato & Assocs. v. Sepulveda Masonry*, 303 Ga. App. 438, 439, n. 5 (693 SE2d 620) (2010).

[6] OCGA § 13-3-44 (a) provides that "[a] promise which the promisor should reasonably expect to induce action or forbearance on the part of the promisee or a third person and which does induce such action or forbearance is binding if injustice can be avoided only by enforcement of the promise. The remedy granted for breach may be limited as justice requires."

to [her] detriment; and (4) an injustice can only be avoided by the enforcement of the promise, because as a result of the reliance, plaintiff changed [her] position to [her] detriment by surrendering, forgoing, or rendering a valuable right.

(Punctuation and footnotes omitted.) *Hendon Properties v. Cinema Dev.*, 275 Ga. App. 434, 438-439 (2) (620 SE2d 644) (2005). Notably, "[e]stoppels are not favored by our law." (Citation and punctuation omitted.) *Cobb County Rural Elec. Membership Corp. v. Bd. of Lights &c.*, 211 Ga. 535, 539 (2) (87 SE2d 80) (1955).

To survive FLB's motion for summary judgment as to the promissory estoppel defense, MAL Rentals and Griffin were required to show that they reasonably relied upon Stevens's alleged representations regarding the prospects of CBWG's sale. See generally *Tampa Bay Financial v. Nordeen*, 272 Ga. App. 529, 535 (2) (612 SE2d 856) (2005) (recognizing that a claimant cannot establish a case for promissory estoppel without proving that he justifiably relied upon the promises). Significantly, the Note and the Guaranty contained "Integration," or entire agreement clauses, providing that the respective Note, loan documents, and the Guaranty "[were] the complete and final expression of the agreement" between the parties.

The entire agreement clause operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement. The [debtor] is, therefore, barred from claiming that he or she relied on an alleged misrepresentation not contained within the agreement.[7]

(Punctuation and footnotes omitted.) *Herman Homes v. Smith*, 249 Ga. App. 131, 132-133 (1) (547 SE2d 591) (2001). See also *Tampa Bay Financial*, supra, 272 Ga. App. at 533-535 (2) (concluding that the merger clause in the parties' contract prevented the claimant from justifiably relying upon any promises made prior to execution of the contract, and thus, the claimant could not prevail on his promissory estoppel claim). The Note, loan documents, and the Guaranty did not contain the alleged representations or promises that CBWG would sell or condition repayment of the loan upon a prospective sale. In

---

[7] We note that although a merger clause in a contract being attacked and rescinded for fraud does not preclude proof that the contract was fraudulently induced, see *City Dodge v. Gardner*, 232 Ga. 766, 770 (208 SE2d 794) (1974); *Crews v. Cisco Bros. Ford-Mercury*, 201 Ga. App. 589, 591 (2) (411 SE2d 518) (1991), a merger clause may preclude a claimant from showing that he or she reasonably relied upon prior representations outside of the contract in support of a promissory estoppel claim to enforce the promise as binding, see *Tampa Bay Financial*, supra, 272 Ga. App. at 533-534 (2).

light of the entire agreement clauses, MAL Rentals and Griffin could not show that they reasonably relied upon the alleged representations in support of their promissory estoppel defense to avoid repayment of the loan. See id.

Moreover, as previously explained in Division 1 (a) above, FLB had no duty to advise MAL Rentals and Griffin regarding the viability of the business venture financed by the loan. See *Lilliston*, supra, 288 Ga. App. at 244 (1). Consequently, Stevens's alleged misrepresentations could not serve as a basis to preclude repayment of the loan under the terms of the Note and the Guaranty. In addition, MAL Rentals and Griffin failed to show that FLB intended to deceive them in making the loan. Significantly, Griffin's deposition testimony expressed a belief that FLB also likely thought that CBWG was going to sell, which is the reason that it agreed to provide the loan.

Contrary to MAL Rentals's and Griffin's claims otherwise, FLB did honor the terms of the Note. Griffin acknowledged that the plain terms of the Note provided that a decline in stock value was a condition that gave FLB the right to accelerate the Note. MAL Rentals and Griffin have failed to point to any evidence showing that FLB's actions to enforce the provisions of the loan were deceptive or fraudulent.

Griffin, however, claims that FLB told her that it would continue to renew the Note, although its purported promise was not reflected in the loan. "Promissory estoppel does not, however, apply to vague or indefinite promises, or promises of uncertain duration." (Citation omitted.) *Ga. Investments Intl. v. Branch Banking &c. Co.*, 305 Ga. App. 673, 675 (1) (700 SE2d 662) (2010). While Griffin claimed that FLB promised to renew the loan, she failed to present any evidence that FLB promised to renew the loan based on all pre-existing material terms or any other specific terms and conditions of any purported loan renewal. Since the alleged promise supporting the promissory estoppel claim was vague and indefinite, it was inactionable. See id. at 675-676 (1). FLB satisfied its burden of showing the lack of a genuine issue of fact as to MAL Rentals's and Griffin's estoppel defense. See id. at 676 (1).

(b) The evidence also fails to support MAL Rentals's and Griffin's defense of breach of an implied duty of good faith and fair dealing. "Every contract implies a covenant of good faith and fair dealing in the contract's performance and enforcement. . . . [B]ut the covenant cannot be breached apart from the contract provisions it modifies and therefore cannot provide an independent basis for liability. (Citations and punctuation omitted.) *Myung Sung Presbyterian Church v. North American Assn. of Slavic Churches &c.*, 291 Ga. App. 808, 810 (2) (662 SE2d 745) (2008). "There can be no breach of an implied covenant of

good faith where a party to a contract has done what the provisions of the contract expressly give him the right to do." (Citation and footnote omitted.) *Cox v. Athens Regional Med. Center*, 279 Ga. App. 586, 591 (1) (b) (631 SE2d 792) (2006). MAL Rentals and Griffin have failed to point to any provision of the Note or the Guaranty that FLB failed to perform in good faith. As previously stated, the express terms of the Note authorized FLB to accelerate the Note upon the occurrence of a default, which included the devaluation of the collateral. Accordingly, FLB did not breach the implied covenant by enforcing the express terms of the Note and the Guaranty. See id.

There being no disputed material facts regarding the issues presented, FLB was entitled to recover on the Note and the Guaranty as a matter of law. See *City of Bremen*, supra, 274 Ga. at 740 (5). We therefore reverse the trial court's denial of FLB's motion for summary judgment.

*Judgment affirmed in Case No. A11A1466. Judgment reversed in Case No. A11A1467. Ellington, C. J., and Doyle, J., concur.*

DECIDED OCTOBER 17, 2011.

*Smith Conerly, Charles S. Conerly, Randall C. Parian*, for appellant.

*Kilpatrick, Townsend & Stockton, Burleigh L. Singleton, John R. Gibson*, for appellee.