[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 12-15449
Non-Argument Calendar
_____

D.C. Docket No. 4:12-cv-00110-BAE-GRS

DOMINIC APPLEGATE,
CHARLES W. BAINES, JR.,
RYBA ENTERPRISES, INC.,

Plaintiffs - Appellants,

AMERIS BANK,
as Assignee of the Federal Deposit Insurance Corporation,
as Receiver of the business and property of Darby Bank
and Trust Co.

Counter - Plaintiff - Appellee,

versus

FEDERAL DEPOSIT INSURANCE CORPORATION,
as Receiver of the Business and Property of Darby Bank & Trust Co.,

Defendant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Georgia
_____

(April 25, 2013)

Before CARNES, HULL, and JORDAN, Circuit Judges.

PER CURIAM:

Ryba Enterprises, Inc., Dominic Applegate, and Charles Baines, Jr. appeal the district court's grant of summary judgment requiring them to pay back money they borrowed from Darby Bank & Trust Company.  In 2006 and 2007 Ryba Enterprises and Applegate executed three promissory notes in favor of Darby.  Those three notes were personally guaranteed by Baines.  A fourth promissory note was executed in 2008 by Applegate Snayd Industries, Inc. in favor of Darby, and it was personally guaranteed by Dominic Applegate.  When the four notes matured in 2010, the makers and guarantors were not able to pay back the principal and interest that was due.

In July 2010 Applegate, Ryba Enterprises, and Baines (collectively referred to as the borrowers) filed suit against Darby in Georgia state court alleging misrepresentation, breach of contract, detrimental reliance, and tortious interference with contractual relations.  Darby counterclaimed for the amounts due under the four promissory notes.

2

On November 12, 2010, the Georgia Department of Banking and Finance closed Darby and took possession of it.  The Federal Deposit Insurance Corporation was appointed as its receiver.  The FDIC then sold virtually all of Darby's assets to Ameris Bank.  The FDIC also executed assignments that transferred to Ameris all of the FDIC's rights in Darby's loans, including the four promissory notes at issue in this case.

The Georgia state court later substituted the FDIC as the defendant and Ameris, which now holds the four promissory notes, as the counter-plaintiff.  The FDIC removed the case to federal court.  The borrowers eventually dismissed with prejudice all their claims against the FDIC, leaving only Ameris' counterclaim against the borrowers.  The district court granted summary judgment to Ameris on its counterclaim, rejecting the borrowers' argument that Ameris was estopped from collecting on the notes.  The court concluded that estoppel could not be asserted against Ameris because the D'Oench Duhme doctrine applied, because the loan documents contained an "entire agreement" clause, and because the borrowers had alleged only that Darby had engaged in wrongdoing and did not allege any wrongdoing by Ameris.  The court entered judgment against the borrowers jointly and severally in the amount of $7,035,709.83 and against Applegate separately in the amount of $679,832.10.  The borrowers have appealed the district court's grant of summary judgment.

I.

We review de novo a district court's grant of summary judgment, "viewing all evidence and drawing all reasonable inferences in favor of the nonmoving party." Chapter 7 Tr. v. Gate Gourmet, Inc., 683 F.3d 1249, 1254 (11th Cir. 2012). "Summary judgment is proper only when there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Id. (quotation marks omitted). "A creditor in possession of a valid and signed promissory note has a prima facie right to repayment, unless the debtor can establish a valid defense." City of Bremen v. Regions Bank, 559 S.E.2d 440, 445–46 (Ga. 2002). Here, the borrowers do not contest the validity of the promissory notes. Instead, they contend that the district court erred in granting summary judgment in favor of Ameris because equitable estoppel bars Ameris' claims against them.

"Estoppels are not generally favored by the law." Collins v. Grafton, Inc., 435 S.E.2d 37, 39 (Ga. 1993). An equitable estoppel defense can be raised only against a party that has: (1) made a false representation or concealed a material fact; (2) with the intention that the other party act upon the misrepresentation; and (3) with knowledge of the true facts. Bell v. Studdard, 141 S.E.2d 536, 540 (Ga. 1965). A party asserting equitable estoppel must show justifiable reliance on the other party's representations and a change in position to his or her detriment. Id.

4

The borrowers assert that Ameris should be estopped from collecting on the notes because Darby's loan officer "represented" to them that Darby would finance the construction costs of certain improvements on real property, but then failed to do so. The borrowers also maintain that Darby's loan officer asked them to "put more collateral or personal funds into the projects to get further support from Darby," which they did, but Darby still failed to make additional loans that were promised. Even if those allegations are true, they do not prevent Ameris from collecting on the loans that Darby did make. "A lender's refusal to make a second loan, or even misrepresentations that it would make a second loan, does not bar the lender from recovery of the amount owed under the first loan." Ga. Invs. Int'l, Inc. v. Branch Banking & Trust Co., 700 S.E.2d 662, 664 (Ga. Ct. App. 2010).

The borrowers also claim that Darby's loan officer "frequently encouraged" them "to purchase more property and obtain more loans through Darby Bank without finishing any projects." Even if that is true, Darby's "encouragement" to make business decisions that later went sour does not warrant application of equitable estoppel because that encouragement was neither a "false representation" nor a "concealment of a material fact."

The borrowers further assert that Darby permitted Applegate to sign incomplete loan applications, dated one loan agreement on a day that Applegate was not available to sign it, froze disbursement of construction draws under one of

5

the notes, and refused to approve short sales of the collateral securing the notes. While those allegations do suggest wrongful conduct by Darby, that still does not relieve the borrowers of their obligation to pay back the money they borrowed. In order for equitable estoppel to apply against Darby, its conduct "must amount to a concealment or false representation of material facts" that is inconsistent with the position it later tries to assert. Collins, 435 S.E.2d at 39. Even if the actions alleged by the borrowers did amount to misrepresentations or concealments, which we doubt, those acts are not inconsistent with the position that Ameris is now asserting—that the borrowers are required to repay the money they borrowed. Because the defense of equitable estoppel could not be asserted against Darby, it cannot be asserted against its successor in interest, Ameris.

## II.

The borrowers also contend that the district court "failed to consider" its argument that Ameris would be unjustly enriched by a judgment for the entire amount of the four promissory notes because it purchased those notes at a "considerable discount." The court did consider that argument and rejected it, noting that there was no reason to "belabor the issue" because the argument was "meritless." We agree.

6

The district court correctly concluded that Ameris was entitled to summary

judgment on its counterclaims against the borrowers.[1]

**AFFIRMED.**

---

[1] In finding that equitable estoppel could not be asserted, the district court relied on reasons that are different from the ones we rely on, including the D'Oench Duhme doctrine. However, we may affirm for any reason supported by the record, even if not relied on by the district court. United States v. $121,100 in United States Currency, 999 F.2d 1503, 1507 (11th Cir. 1993). For that reason we need not address the D'Oench Duhme doctrine.