**THIRD DIVISION
DOYLE, P. J.,
REESE and BROWN, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
https://www.gaappeals.us/rules**

**March 10, 2022**

# In the Court of Appeals of Georgia

A21A1566. HIGH TECH RAIL AND FENCE, LLC v. CAMBRIDGE SWINERTON BUILDERS, INC.

REESE, Judge.

In this contract dispute, High Tech Rail and Fence, LLC ("High Tech") appeals from the trial court's grant of partial summary judgment in favor of Cambridge Swinerton Builders, Inc., n/k/a Swinerton Builders, Inc. ("Cambridge Swinerton"). On appeal, High Tech argues that the trial court erred in: (1) finding that Cambridge Swinerton properly terminated High Tech in accordance with the subcontract agreement; (2) finding that High Tech waived all other claims under the contract; and (3) granting summary judgment on High Tech's tortious interference claim. For the reasons set forth infra, we affirm.

Viewed in the light most favorable to High Tech, as the nonmoving party below,[1] the record shows the following. In June 2016, Cambridge Swinerton, as a general contractor, entered into a subcontract agreement with High Tech. The agreement provided that High Tech would furnish and install aluminum railings for the Centennial Park Project (the "Project") in Atlanta. Article 14 of the agreement provided the conditions in which Cambridge Swinerton could terminate High Tech from the Project:

> **14. Termination.** If, in the opinion of [Cambridge Swinerton], [High Tech] shall at any time (1) refuse or fail to provide sufficient properly skilled workers, adequate supervision, or materials of proper quality, (2) fail in any material respect to prosecute the work according to [Cambridge Swinerton's] schedule, (3) cause in any way, the stoppage or delay or interference with the work of [Cambridge Swinerton] or any other contractor or subcontractor, (4) file bankruptcy, become insolvent, or generally be unable to pay its creditors, (5) fail to comply with any material provision of this Subcontract or the Contract Documents, then, [Cambridge Swinerton] may, forty-eight (48) hours after written notice to [High Tech], cure any such defect or default in [High Tech]'s performance and deduct the cost thereof from any money then due, or thereafter to become due, to [High Tech]. [Cambridge Swinerton] may also, at its option, terminate this Agreement, and [Cambridge Swinerton]

---

[1] See *Griffin v. State Bank*, 312 Ga. App. 87 (718 SE2d 35) (2011).

2

shall have the further right to take possession of the materials and equipment of [High Tech] for the purpose of completing the work.

Article 14 further provided that, in the event of a termination under that article, then High Tech was not entitled to receive payment until the work was fully completed and accepted by Cambridge Swinerton and the Project owner. Cambridge Swinerton would then pay High Tech the excess, if any, of the "unpaid balance" over "the expenses incurred by [Cambridge Swinerton] as a result of the default, plus reasonable charges for overhead and profit[.]" If the "expenses, overhead and profit exceed the unpaid balance, [High Tech] shall pay [Cambridge Swinerton] the difference upon demand."

Article 14 also included a waiver provision:

[High Tech] hereby waives all claims against [Cambridge Swinerton] for lost profits, rent on equipment or other alleged damages related to any proceeding which [High Tech] might institute for wrongful back charges or wrongful termination under this Agreement. The parties agree that the termination and/or back charges shall be binding if [Cambridge Swinerton] has, in good faith, made a decision that [High Tech]'s performance is inadequate. The parties agree that such determinations are difficult to make, and must be made, under pressing circumstances and agree to be bound in accordance with this Article in light of the circumstance confronting [Cambridge Swinerton] at the time such a decision is made.

Finally, the agreement contained a work-through provision, which stated that "no dispute shall interfere with the progress of construction, and [High Tech] shall proceed with its work as directed."

Over the course of the Project, Cambridge Swinerton sent notices to cure to High Tech on June 29, 2017, September 20, 2017, and November 27, 2017. The notices referenced High Tech's inability to provide materials and complete the work on schedule. Then, from November 27 to November 29, High Tech did not send any laborers to the Project. On November 30, Cambridge Swinerton terminated the agreement pursuant to Article 14 for lack of progress under the project schedule, failure to procure materials in a timely manner, and abandonment of the job site. Around this time, Cambridge Swinerton directly contacted High Tech's aluminum supplier, Ultra Manufacturing ("Ultra"), in order to buy enough material to complete the Project.

In February 2019, High Tech filed a complaint against Cambridge Swinerton, alleging, inter alia, claims for breach of contract, quantum meruit, unjust enrichment, and tortious interference with contract. Cambridge Swinerton counterclaimed for damages due to High Tech's default. Cambridge Swinerton filed a motion for partial

summary judgment on High Tech's claims, which the trial court granted. This appeal followed.

> Summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. A de novo standard of review applies to an appeal from a grant or denial of summary judgment, and we view the evidence, and all reasonable conclusions and inferences drawn from it, in the light most favorable to the nonmovant.[2]

"Contract disputes are particularly well suited for adjudication by summary judgment because construction of contracts is ordinarily a matter of law for the court."[3]

> Construing the language of a contract presents a question of law for the court, unless the language presents an ambiguity that cannot be resolved by the rules of construction. The cardinal rule of construction is to ascertain the contracting parties' intent, and where the terms of a written contract are clear and unambiguous, the court will look to the contract alone to find the intention of the parties.[4]

With these guiding principles in mind, we now turn to High Tech's claims of error.

---

[2] *Griffin*, 312 Ga. App. at 87 (citation and punctuation omitted).

[3] *Brazeal v. NewPoint Media Group*, 331 Ga. App. 49 (769 SE2d 763) (2015) (citations and punctuation omitted).

[4] Id. at 53 (citations and punctuation omitted).

1. High Tech argues that the trial court erred in finding that Cambridge Swinerton properly terminated the contract under Article 14. High Tech contends that there was a question of fact as to whether Cambridge Swinerton terminated the contract in good faith.

"[W]here the manner of performance is left more or less to the discretion of one of the parties to the contract, that party is bound to the exercise of good faith."[5] The question of good faith is generally a question for the jury.[6] However, "[f]irms that have negotiated contracts are entitled to enforce them to the letter, even to the great discomfort of their trading partners, without being mulcted for lack of good faith."[7] "'Good faith' is a compact reference to an implied undertaking not to take opportunistic advantage in a way that could not have been contemplated at the time of drafting[; it does] not block use of terms that actually appear in the contract."[8]

---

[5] *Shelnutt v. The Mayor & Aldermen of the City of Savannah*, 333 Ga. App. 446, 453 (3) (776 SE2d 650) (2015) (citations and punctuation omitted).

[6] See *Camp v. Peetluk*, 262 Ga. App. 345, 350 (2) (585 SE2d 704) (2003).

[7] *Martin v. Hamilton State Bank*, 314 Ga. App. 334, 335 (723 SE2d 726) (2012) (citations and punctuation omitted).

[8] Id. (citation and punctuation omitted).

Here, it is undisputed that High Tech did not send workers to the Project for three days after Cambridge Swinerton sent High Tech a notice to cure. Pursuant to Article 14 and the work-through provision, Cambridge Swinerton thus could terminate the contract. Although High Tech contends that the delays in completing the Project on schedule were attributable to Cambridge Swinerton, High Tech does not point to any facts in the record explaining its absence from the Project site for three days. Accordingly, the trial court did not err in granting summary judgment on this claim.[9]

2. High Tech argues that the trial court erred in finding that High Tech waived all other claims under the contract.

"It is the paramount public policy of this state that courts will not lightly interfere with the freedom of parties to contract. A contracting party may waive or renounce that which the law has established in his or her favor, when it does not thereby injure others or affect the public interest."[10] "Provisions severely restricting

---

[9] See *Martin*, 314 Ga. App. at 337 (affirming the trial court's grant of summary judgment on a contractual good faith claim); *WirelessMD v. Healthcare.com Corp.*, 271 Ga. App. 461, 469 (2) (610 SE2d 352) (2005) (same).

[10] *2010-1 SFG Venture LLC v. Lee Bank & Trust Co.*, 332 Ga. App. 894, 897 (1) (a) (775 SE2d 243) (2015) (citation and punctuation omitted).

remedies . . . act as exculpatory clauses and therefore should be explicit, prominent, clear and unambiguous."[11] "In determining whether a limitation of liability clause or an exculpatory clause is sufficiently prominent, courts may consider a number of factors, including whether the clause is contained in a separate paragraph; whether the clause has a separate heading; and whether the clause is distinguished by features such as font size."[12]

Here, the exculpatory clause is in the same font used entirely throughout the contract, and the provision is not in a separate section specifically addressing liability or recoverable damages. Instead, the waiver provision appears in Article 14, which is titled "Termination." Under these circumstances, the clause is not sufficiently

---

[11] *Dataforensics v. Boxer Property Mgmt.*, 361 Ga. App. 311, 319-320 (1) (c) (864 SE2d 140) (2021) (citation and punctuation omitted).

[12] Id. at 320 (1) (c) (citation and punctuation omitted).

prominent as to be enforceable.[13] Accordingly, the trial court erred in enforcing the exculpatory clause.

However, we may affirm a summary judgment order if the court "is right for any reason[,]" if that reason was argued in the trial court below.[14] Here, Cambridge Swinerton argued in its motion for summary judgment that High Tech could not maintain its claims for quantum meruit and unjust enrichment because there was an express contract between the parties. We agree with this analysis.[15] Accordingly, we affirm the trial court's grant of summary judgment on these claims.

[13] See *Dataforensics*, 361 Ga. App. at 320 (1) (c) (holding that an exculpatory clause was not prominent where it was in the same typeface as the entire contract and in a section entitled "Landlord's Liability"); *Warren Averett, LLC v. Landcastle Acquisition Corp.*, 349 Ga. App. 479, 484-485 (1) (b) (825 SE2d 864) (2019) (physical precedent only) (holding that an exculpatory clause was not prominent where it was in the same typeface as the entire contract and in a section entitled "Issue Resolution"); cf. *2010-1 SFG Venture LLC*, 332 Ga. App. at 899 (1) (a) (holding that an exculpatory clause was enforceable where it was in a section entitled "Limitation on Liability of SFG" and "was not hidden in the minutiae of unrelated provisions[ ]").

[14] *Serchion v. Capstone Partners*, 298 Ga. App. 73, 76 (2) (679 SE2d 40) (2009).

[15] See *Blueshift, Inc. v. Advanced Computing Technologies*, 273 Ga. App. 802, 804 (1) (616 SE2d 816) (2005) ("It is well established that recovery in quantum meruit is not authorized when, as here, the claim is based on an express contract.") (citation and punctuation omitted); *Kwickie/Flash Foods v. Lakeside Petroleum*, 246 Ga. App. 729, 730 (541 SE2d 699) (2000) ("Neither does an unjust enrichment theory lie where there is an express contract."); see also *Cook Pecan Co. v. McDaniel*, 344 Ga. App. 370, 374 (2) n.22 (810 SE2d 186) (2018) (same).

3. High Tech argues that the trial court erred in granting summary judgment on High Tech's tortious interference claim.

> To recover for tortious interference with business relations, a plaintiff must establish that the defendant: (1) acted improperly and without privilege; (2) acted purposely and with malice with the intent to injure; (3) induced a third party or parties not to enter into or continue a business relationship with the plaintiff; and (4) caused the plaintiff financial injury. To sustain a claim for intentional interference with business relations, the tortfeasor must be an "intermeddler" acting improperly and without privilege. To be liable for tortious interference with business relations, one must be a stranger to the business relationship giving rise to and underpinning the contract. But, where a defendant had a legitimate interest in either the contract or a party to the contract, he is not a stranger to the contract itself or to the business relationship giving rise thereto and underpinning the contract. Nor does the fact that a defendant did not sign the contract preclude a finding that he was no stranger to the contract. In sum, all parties to an interwoven contractual arrangement are not liable for tortious interference with any of the contracts or business relationships.[16]

In this case, Cambridge Swinerton directly contacted Ultra — High Tech's supplier — in order to complete the Project. Cambridge Swinerton was not a stranger to the business relationship between Ultra and High Tech because the relationship

---

[16] *Cook Pecan*, 344 Ga. App. at 374 (3) (punctuation and footnote omitted).

10

involved acquiring materials for the Project. While High Tech argues that this issue is controlled by *Howerton v. Harbin Clinic*, in which we held that the defendant was a stranger to the plaintiff's employment contract,[17] the situation here is more akin to the facts set forth in *J. Kinson Cook of Ga. v. Heery/Mitchell*, where we held that a project owner was not a stranger to the contract and business relationships between a general contractor and its subcontractors.[18] Accordingly, the trial court did not err in granting summary judgment on this claim.[19]

*Judgment affirmed. Doyle, P. J., and Brown, J., concur.*

---

[17] See 333 Ga. App. 191, 197-202 (1) (a) (776 SE2d 288) (2015).

[18] See 284 Ga. App. 552, 556-558 (b) (644 SE2d 440) (2007).

[19] See id. at 557 (b); see also *Cook Pecan*, 344 Ga. App. at 374-375 (3); *Stefano Arts v. Sui*, 301 Ga. App. 857, 863 (2) (690 SE2d 197) (2010); *Cox v. City of Atlanta*, 266 Ga. App. 329, 333 (1) (596 SE2d 785) (2004).